# Paolini  Haley

March 8, 2021

Janice M. Abraham
President and Chief Executive Officer
United Educators
7700 Wisconsin Avenue Suite 500
Bethesda, MD 20814

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AND EMAIL (jabraham@ue.org)

RE:   Fabiana Hillary McLeod, Mark McLeod, and Karina McLeod
      v.
      The Fessenden School, et al.

Dear Ms. Abraham:

This letter is a statutory prerequisite to an action under Mass. Gen. Laws c. 93A, the Massachusetts Consumer Protection Act. Section 9(3) of the Act states, "[a]t least thirty days prior to the filing of [a c. 93A] action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."

The claimants are Fabiana Hillary McLeod and her parents, Mark and Karina McLeod. Please be advised that unless this letter effectuates a reasonable settlement in the thirty (30) day time frame required by the Act, the McLeod family will be filing actions against United Educators, its insured, the Fessenden School, and others shortly after the thirty (30) days have elapsed, in the United States District Court, District of Massachusetts. As such, the McLeod family fully intends to and is totally prepared to use the "heavy artillery of c. 93A, i.e., multiple damages and the imposition of counsel fees." Cassano v. Gogos, 20 Mass. App. Ct. 348, 351 (1985).

Attorneys at Law
Domenic Paolini
Richard M  Haley

400 Tradecenter, Suite 5900
Woburn, MA 01801

t  617 951 0300
f  617 622 5077
e  info@paoliniandhaley.com

www.paoliniandhaley.com

A Professional Corporation

Page 2
March 8, 2021

Please be advised that I represent Fabiana Hillary McLeod and her parents, Mark and Karina McLeod. During the summers of 2015 and 2016, when Fabiana was thirteen and fourteen years old, respectively, a thirty-year-old male co-director of the Fessenden School Summer English Language Learning Program provided Fabiana with alcohol and brownies laced with marihuana and repeatedly sexually assaulted and raped her multiple times in a Fessenden School dormitory, in other areas of the Fessenden School and in a Manhattan hotel room during a Fessenden School field trip to New York City.

Yes Ms. Abraham, the Fessenden School is one of your insureds. This letter concerns a second wave of assaults on my clients by your so-called insurance company and your insureds.

### *The Underlying Facts*

Again, please be advised that unless this letter effectuates a reasonable settlement in the thirty (30) day time frame required by the Act, the McLeod family will file their Complaint shortly after the thirty (30) days have elapsed, in the United States District Court, District of Massachusetts. Please note that the following bulleted paragraphs are taken directly from the McLeod family's Complaint.

- On February 25, 1994, a single mother from Hong Kong wrote to the Fessenden School in Newton, Massachusetts to request "an application form as soon as possible" for her eleven-year-old son, Howie Leung.  This single mother hoped that this "famous boarding school," as she described Fessenden School, would provide her son with "excellent preparations" for a successful and fulfilling life.  Howie, "a timid young boy" from China, hoped to take care of his "mum".



I consider my mum to be the most important person in my life, because she is the person who loves and cares for me the most.

A few years ago, my mum and dad got divorced. Now, she has to take care of me alone.

My mum is a manager in a sporting goods company. In my mum's company, there are quite a number of people helping her in her every day work, which is really heavy. She has to work very hard to get her work finished.

My mum has a habit to save money. She spends her money on things that are really necessary, such as my school fees, food, and transportation. She seldom spends her money on entertainment.

My mum is a fairly good piano player, although she doesn't get much chance to practise, she could play well.

My mum is also good at tennis, and mostly plays about three to four times a week over an hour each time.

My mum does not cook too often, though she could cook good dishes of soyasauce chicken, steak, and some other dishes.

My mum could cook carrot soup, vegtible soup and also fish soup.

My mum cares about me a lot. She always tells me to do the right things for me to have a good life, and to be a good boy.

I also love my mum very much and I will do my best at school and work hard when I grow up, and take care of her when she gets old.

Page 3
March 8, 2021

- Howie Leung was accepted into the Fessenden School as a "7-day boarding" student. His mother wanted the best for her son at his new school. In response to a request for Christmas donations to the Fessenden School, the single mother faxed the following message,

  > Many thanks for your fax dated 18 Dec., 95. Regarding the donation. I would like to donate an amount of $100 to support your school in educational need. Please debit my account in the next payment.
  >
  > I hope you will understand that my son was brought up in a single parent's family, that's the maximum effort I can afford.
  >
  > Have a Merry Christmas.

- Eventually Howie Leung would graduate from the Fessenden School, attend secondary school, and graduate from college. Howie Leung became a teacher of children.

- Between September 2013 and June 2016 Howie Leung was a thirty something year old teacher at the Rundlett Middle School in Concord, New Hampshire.

- However, Howie Leung did not sever his ties to the Fessenden School; he would work during the summer in the Fessenden School Summer English Language Learning Program.

- Eventually Howie Leung would become the co-director of the Fessenden School Summer English Language Learning Program.

- The boy who entered in the Fessenden School as "Quite a timid young boy" was now a dangerous sexual predator who preyed on children.

- The science of child sexual abuse unequivocally states that 35% of child sexual abusers were once abused themselves (and the number is higher in males) creating an abusive pattern.

- Between September 2013 and June 2016 Fabiana McLeod was a student at the Rundlett Middle School in Concord, New Hampshire.

- During his tenure at the Rundlett Middle School, Leung was observed behaving too casually with female students.

- In the Fall of 2014, staff and students noticed Leung's favoritism of Fabiana McLeod.

Page 4
March 8, 2021

- In December 2014, a female Rundlett Middle School student complained to school authorities about Leung's casual behavior and favoritism. The school authorities quickly suspended the female student for spreading bad rumors.

- In February 2015, Leung's relationship with Fabiana turned sexual.

- During the summers of 2015 and 2016, Leung was a teacher, counsellor, and co-director of the Fessenden School Summer English Language Learning Program.

- The Fessenden School described its Summer English Language Learning Program as "a unique English immersion program for English Language Learners. For five weeks, 45 boys and girls between the ages of 10-15 years old become a close-knit, family-like community. The multicultural environment presents priceless opportunities for students to learn about different countries and customs while strengthening their English abilities."

- Fessenden School Summer English Language Learning Program participants were usually children of well-to-do international families.

- Fessenden School Summer English Language Learning Program participants usually lived in dormitories on the Fessenden School campus.

- Leung recruited young girls from the Rundlett Middle School to participate, at no cost, in the activities of the Fessenden School Summer English Language Learning Program as "helpers".

- Leung discussed the Fessenden School Summer English Language Learning Program with Fabiana McLeod's father, Mark McLeod. Leung represented that because the Fessenden School was such a venerated and prestigious institution, Fabiana would benefit from being his "helper" at the school.

- Leung would drive Fabiana McLeod, in his vehicle, from Concord, New Hampshire, across the state line into Massachusetts, and to the Fessenden School in Newton, Massachusetts.

- During the trip from Concord, New Hampshire to Newton, Massachusetts, Leung would force Fabiana McLeod to touch his genital area with her hand.

- In the heat of the summer, on the Fessenden School campus, the young girls Leung had recruited from the Rundlett Middle School were known as "Howie's Concord Girls".

- During the summer of 2015 and 2016, Fabiana was one of "Howie's Concord Girls".

Page 5
March 8, 2021

- Leung would pay lots of attention to the "Concord Girls" and especially to Fabiana McLeod. Leung would often separate Fabiana McLeod from the other children and the other "Concord Girls" and have her work with him in his Fessenden School office.

- Leung and other adult Fessenden School teachers and proctors would often have after hours gatherings in a Fessenden School room where alcohol and marihuana laced brownies were served. When all the other Fessenden School Summer English Language Learning Program children were asleep, the "Concord Girls" were allowed to join the adult gatherings and freely help themselves to alcohol and the marihuana laced brownies.

- Leung would assign the "Concord Girls" to rooms in Fessenden School dormitories. Leung would assign Fabiana McLeod to a secluded corner room in a dormitory named "Sanderson". This corner room was accessible via a secluded stairway which would allow quick entry and exit into the corner room.

- During the summer of 2015, another of "Howie's Concord Girls" was rooming with Fabiana.

- During the summer of 2015, Leung continued his sexual advances toward Fabiana McCleod on the Fessenden School campus. Initially, Leung seemed to be testing the waters as to how far he could prey on Fabiana McLeod.

- On several occasions during the summer of 2015, Leung would enter Fabiana McLeod's room and lay in the small dormitory bed with Fabiana and the other "Concord Girl" supposedly to watch movies on a laptop computer.

- Leung always laid next to Fabiana McLeod. Leung would cover himself and the two "Concord Girls" with a blanket.

- While in the bed and covered with the blanket, Leung would fondle Fabiana McLeod.

- By the end of the summer of 2015, Leung would enter Fabiana McLeod's room when she was alone. He would barricade the door with furniture, expose himself and sexually assault her.

- After the summer of 2015, during the 2015-2016 academic year at the Rundlett Middle School, Leung continued to pursue Fabiana McLeod.

- During the summer of 2016, Fabiana McLeod again was a "Concord Girl". This summer Leung's routine was the same except now Leung escalated the frequency and intensity of his sexual assaults on Fabiana McLeod.

Page 6
March 8, 2021

- During the summer of 2016, Leung organized a field trip for Fessenden School Summer English Language Learning Program children to New York City. A bus transported the children, Fessenden School teachers and proctors, Leung, Fabiana McLeod, and another "Concord Girl" to Manhattan.

- The group stayed overnight in a Manhattan hotel. Fabiana Mcleod and the other Concord Girl shared a room. Leung occupied a room very close by.

- In the evening, Leung asked Fabiana McLeod to come to his hotel room under the pretense that she was to put money into envelopes. The envelopes were to be distributed to the Fessenden School Summer English Language Learning Program children the next day to be used as lunch money.

- When Fabiana finished placing the money in the envelopes, Leung went to the door of the motel room and fastened the inside latch so that the door could not be opened from the outside.

- Leung then approached Fabiana McCleod from behind, hugged her, and massaged her neck and shoulders.

- Leung placed Fabiana McLeod's arms around him, forced her to hug him tightly, and held her so tightly that she could not pull away.

- Leung then picked Fabiana McLeod up and placed her on the bed in his hotel room.

- Leung then took off his pants and underwear. He had an erection.

- Leung then forced Fabiana to perform oral sex on him while he held the back of her head to restrain her.

- Eventually Fabiana McCleod, visibly upset, pulled away. Leung then brought her to the door of his hotel room, opened the door and angrily shoved her out of the room.

- Fabiana McLeod went to her hotel room. The room was empty. The other Concord Girl was in a lounge area playing games with the other children. Fabiana McLeod began to cry and eventually, exhausted, fell asleep.

- Once the group returned to the Fessenden School Leung continued his assaults on Fabiana McLeod in her dormitory room.

- A few days after the trip to New York City, Leung emailed Mark McLeod:

  > I am so glad that Fabiana was with us in NYC. She is an
  > amazing individual with a lot to offer. I also wanted to point out
  > that I observed her helping out one of our classes in the
  > afternoon program, understanding today's world, and she was
  > very engaging and helpful. I was very encouraged to see these
  > types of positive interactions.

- On July 23, 2016, shortly after the New York City field trip, a receipt Leung received at his school email indicates that Leung sent Fabiana McLeod a hat he bought for her online.

- When teachers in the Fessenden School Summer English Language Learning Program began complaining that Leung's relationships with the "Concord Girls", especially his open and notorious closeness and favoritism of Fabiana McLeod, were a distraction in the classroom, Leung "would extremely defend" his conduct.

- If Fabiana McLeod wanted to hang out with kids instead of Leung, "he would get extremely angry". Leung complained to the other "Concord Girls" that Fabiana McLeod did not want to spend time with him.

- When interviewed, another "Concord Girl" stated that she did not think that Leung's relationship with Fabiana McLeod was "weird enough" to do anything about.

- However, one of the other Fessenden School counselors, who was about twenty years old, was particularly concerned about the relationship.

- This counselor and the other "Concord Girls", approached Leung and said, "We know you're close to her, but it looks really strange and people would be really concerned."

- The Fessenden School counselor, even though mandated to report his concerns pursuant to Mass. Gen. Laws c. 119 § 51A, made no report.

- Leung had developed a game that he called "Manhunt". During this game Leung would chase the Fessenden School Summer English Language Learning Program children through the corridors and tunnels of the Fessenden School buildings. No other adults were involved in this game.

- During this game Leung would hunt Fabiana McLeod and sequester her in a secluded stairwell. He would forcibly kiss her and act like he was dominating her. He would fondle her breasts under her shirt, undress her, and digitally and orally rape her.

- The number of times that Leung sexually assaulted Fabiana McLeod at the Fessenden School are too numerous to count.

- Eventually the summer of 2016 – Fabiana McLeod's summer of hell - was over. In September 2016, Fabiana McLeod was to start the new school year in a new school as a student at Concord High School. She assumed she was now safe. Leung and the Rundlett Middle School were finally behind her.

- However, Fabiana was shocked to discover that Leung had arranged a transfer to the Concord High School. In addition, she was assigned a locker next to Leung's new office. Leung, like the villainous deacon in the movie *Night of the Hunter*, was back!

- The frightening reappearance of the teacher who had repeatedly sexually assaulted and raped her triggered severe and emotional reactions in Fabiana McLeod.

- In October 2016, Mark and Karina Mcleod sought consultation with a therapist for their daughter, Fabiana, then almost fifteen years old. Since the summer of 2016, Fabiana's family had observed the sudden drastic change in her behavior. Fabiana, a strait-laced "A" student with no previous mental health issues, had suddenly become anxious, afraid, angry, and belligerent. Fabiana became interested in alcohol and marihuana. Her appearance changed. The therapist diagnosed "Adjustment disorder, With anxiety".

- The "timid young boy" from China sent by his mother to Fessenden School so many years ago to be prepared for success in life was now an abuser of children.

### *United Educator's Deceptive Conduct*

**1.       United Educators has violated Mass. Gen. Laws c. 176D.**

Massachusetts law dictates that a valid 93A demand letter must identify the defendant's conduct complained of. The description of the defendant's conduct need only be sufficiently specific "to give the defendant[] 'an opportunity to review the facts and the law to see if the requested relief should be granted or denied' and to enable [defendant] to make 'a reasonable tender of settlement". Brandt v. Olympic Const., Inc., 16 Mass. App. Ct. 913 (1983), quoting York v. Sullivan, 369 Mass. 157, 162 (1975).

Massachusetts General Laws Chapters 93A and 176D ("93A" and "176D") are the Consumer Protection laws that regulate the personal injury claims and settlement practices of insurance companies in Massachusetts. 176D defines the insurance practices that are statutorily ""unfair". 93A provides the mechanism for filing claims for violations of 176D and sets forth the awardable damages arising from such unfair practices. Mass. Gen. Laws c. 176D, § 3(9) defines the following, among others, as "unfair settlement practices":

- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

- Refusing to pay claims without conducting a reasonable investigation based upon all available information;

- Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

- Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.

The above four bulleted unfair settlement practices perfectly describe United Educators deceptive conduct. Since August 2020, I have provided Fessenden School counsel with pages and pages of information, including detailed facts of this matter, identification of experts who are ready to testify at trial, summaries of expert opinion, etc. I have repeatedly asked for specific documents in letters dated August 13, 2020, September 11, 2020, October 23, 2020, February 18, 2021, and February 26, 2021. I have attached copies of these letters and I am incorporating them into this 93A demand letter.

Fessenden School counsel, despite his oral claims that this matter should be settled through open, honest and good-faith cooperation and mediation, has never responded *in writing* to my detailed letters and specific document requests. Short sentence emails are the only written correspondence I have received from the Fessenden School counsel. My repeated written requests for complete copies of the Fessenden School's employee manuals, dormitory policies and procedures, personnel records, insurance policies, etc. have gone unanswered. Although the Fessenden School has produced 115 pages of cleverly selected non-information, they have never *certified, in writing*, that the specific documents I have requested do not exist or *responded, in writing*, that the documents exist, but the Fessenden chooses not to produce them. This is a deceptive practice. United Educators and the Fessenden School are required to conduct a "reasonable investigation based on all available information". The fact that certain documents do not exist is also material and relevant "available information".

In addition, if the Fessenden School suddenly produces the requested documents during discovery, the only conclusion would be that the Fessenden School deceptively manufactured the documents. Of course, this will open the door for extensive electronic discovery and depositions of many, many Fessenden School administrative personnel.

The Fessenden School has a long and sordid history of sexual abuse by its teachers and administrators. As far back as 1977, long before reports of the abuse of children by clergy and the Boy Scouts, national news stories appeared in the print media about sexual abuse involving Fessenden School teachers. For example, on Sunday, December 11, 1977 a Texas newspaper, the

Page 10
March 8, 2021

Fort Worth Star Telegram, described the Fessenden School as "where pupils wear coats and ties and call their teachers 'sir,' was founded 74 years ago and is one of a handful of private grammar schools preferred by the Boston area's Yankee upper crust" and reported that Fessenden School teachers were charged with abusing "little boys".



On October 19, 2011, the Boston Globe reported that the Fessenden School had received a complaint from a former student claiming sexual abuse on campus in the 1970s. The Fessenden School was quick to respond. In a letter, dated October 18, 2011, addressed to "Fessenden Alumni, Parents of Alumni, Parents, and Friends," then Headmaster David B. Stettler offered a

Page 11
March 8, 2021

"thorough historical review" of sexual abuse involving the Fessenden School dating back to the "1960's." Mr. Stettler acknowledged that he was "deeply concerned" about the School's history, stating that "School leadership has come to the realization that this intolerable behavior in past decades may have been broader in scope than we once had reason to believe."

In this letter, Mr. Stettler offered the Fessenden School's plan for responding to this crisis and to provide for "the safety and well-being of the boys at Fessenden." Mr. Stettler's October 18, 2011 letter stated:

- "With our faculty and staff, we have emphasized the importance of raising our collective consciousness and **reiterated our expectation of vigilance in identifying and recognizing signs of questionable behavior**."

- "Our administrative team and faculty **have reviewed and revised the existing policies and guidelines** regarding interactions between adults and children in our school community."

- "In our opening faculty meetings this fall, as we have done in previous years, **we held discussions on maintaining boundaries in our relationships with our students**, and we are committed to sustaining **ongoing training**."

- "We are **reexamining our school-wide wellness curriculum** to affirm that we are giving our boys the tools and understandings that they need in order to help maintain their own safety."

- "As required by Massachusetts state law, our hiring process for faculty and staff includes mandatory Criminal Offender Record Information and Sex Offender Registry Information background checks."

- "We have **zero tolerance for sexual misconduct** and abuse."

- "Parents in particular may want to know if we plan to address this communication and its content with our students. At this time, we do not plan to talk directly with the boys about it. In the course of our wellness curriculum, **the issue of boundaries is addressed** in age-appropriate ways and will continue to be emphasized."

A second letter from Headmaster David B. Stettler, dated May 5, 2016 - only one-month before Fabiana would be brought to the school for her second summer of abuse, prepared the Fessenden School community for another report of sexual abuse, titled "SCHOOLED IN SHAME", which was to be published in the May 8, 2016 Boston Sunday Globe. Mr. Stettler's May 5, 2016 letter informed the Fessenden School community of the following:

- "I recently met with a reporter from the Boston Globe and shared what we have learned since first reaching out to the community in 2011."

Page 12
March 8, 2021

- "The coverage may include criticism related to how we have responded since 2011 to the egregious actions in the School's past - there are those who believe we had shared too openly and others who feel we have not been transparent enough."

- "I have made every effort, **with the full support of our Board of Trustees,** to model our School's values of honesty, compassion and respect in every decision and action."

- "Our community regularly participates in personal safety, wellness, and **boundaries training**, and a **character education program** is woven into the fabric of the school."

- "We are resolute in our commitment to protect our students and have **zero tolerance for sexual misconduct or abuse**."

- "Our community continually strives to ensure that our boys feel comfortable to be themselves, to discover their passions, and to reach out to members of the faculty and staff with any type of concern."

A third letter from Headmaster David B. Stettler, dated May 8, 2018, to the Fessenden School community obviously was a response to claims of sexual abuse by two former students who claimed they were abused in the 1960's and 1970's. These two former students eventually filed a lawsuit against the Fessenden School and others in Middlesex County Superior Court on October 12, 2018 (Civil Action No. 18-2949). In his May 8, 2018 letter, Headmaster Stettler stated,

- "In my earlier letters to the community, I have described the **education of our students, employee screenings, mandatory employee training, policies, procedures, protocols, and practices** that are currently in place."

Taking Headmaster Stettler at his word as expressed in his letters and taking Fessenden School counsel at his word that the Fessenden School desired to settle this matter through mediation, I have repeatedly requested, through its counsel, that the Fessenden School produce:

- documentation of how, where, and when the Fessenden School has "emphasized the importance of raising [its] collective consciousness and reiterated [its] expectation of vigilance in identifying and recognizing signs of questionable behavior"

- "the existing policies and guidelines regarding interactions between adults and children in [the Fessenden] school community"

- documentation of how, where, and when "discussions on maintaining boundaries in our relationships with [Fessenden] students" took place

- documentation of how, where, and when the Fessenden School provided "ongoing training"

- documentation of how, where, and when the Fessenden School provided "the tools and understandings" to help students maintain their own safety"

- documentation of the Fessenden School's "hiring process for faculty and staff"

- documentation of the Fessenden School's "zero tolerance for sexual misconduct and abuse"

- documentation of how, where, and when the Fessenden School addressed "the issue of boundaries . . . in age-appropriate ways"

- documentation of "personal safety, wellness, and boundaries training"

- documentation of the Fessenden School's processes for employee screenings, mandatory employee training, policies, procedures, protocols, and practices that are currently in place"

- documentation of "a character education program"

If these documents do not exist or if the documents exist but have not been implemented as Headmaster Stettler deceptively implies, then Headmaster Stettler and the Board of Trustees intentionally deceived the Fessenden community. This is gross negligence, willful and wonton conduct, reckless conduct and intentional conduct that goes well beyond simple negligence. Headmaster Stettler and the Board of Trustee were well aware that failure to develop and implement policies to protect children in an institution well known for the abuse of children would only injure more children. Sure enough Fabiana McLeod was tragically injured.

Although, in his letters, Headmaster Stettler acknowledges that the standard of care for the Fessenden School requires "employee screenings, mandatory employee training, policies, procedures, protocols, and practices", etc., Fessenden School counsel has ***orally*** represented that the Fessenden School has no employee handbook, no guidelines concerning boundaries between its teachers or employees and children, and no designated person or administrative framework to deal with the prevention, reporting, investigation, and dispensation of claims of sexual assaults at the Fessenden School. Counsel has also ***orally*** represented that guidelines are not necessary because pedophiles, especially the slick pedophiles, do not follow guidelines. In response to my repeated and multiple requests for a copy of the personnel file of the former co-director of the Fessenden School Summer English Language Learning Program. Fessenden School counsel provided a one-page criminal record investigative report from New Hampshire dated 2004.

Again, the Fessenden School has never responded, ***in writing***, that the requested documents do not exist or that the requested documents do exist, but the Fessenden School refuses to produce them.

Page 14
March 8, 2021

Fessenden School counsel claims the Fessenden School has no liability. His take on this tragedy is that the former co-director of the Fessenden School Summer English Language Learning Program was such an unusually slick pedophile that nobody could possibly have foreseen that he was a child rapist. I guess your insured thinks pedophiles wear a scarlet "P" on their chests as a beacon to warn young children. Of course the former co-director of the Fessenden School Summer English Language Learning Program was smooth, slick, friendly and trusted by the community! All pedophiles share those characteristics. The ability of pedophiles to camouflage themselves in the community is the very reason why the standard of care requires educational institutions to actively and frequently train teachers, students, and parents to recognize the signs of child sexual abuse and immediately report them to a designated person.

Fessenden School counsel also claims that Fabiana's father is to blame. According to counsel, Fabiana's father, like the Fessenden School, was totally bamboozled by the slick pedophile that he allowed the pedophile to transport his virgin daughter to the Fessenden School for overnight stays. The insinuation being that perhaps Fabiana should sue her father? Ms. Abraham, you, the Fessenden School, and its counsel are fully aware that the Fessenden School is required to follow the standards of care that Headmaster Stettler clearly elucidated in his letters. Unfortunately, for Fabiana and perhaps for many other victims, the Fessenden School did not practice what Headmaster Stettler preached.

Fessenden School counsel tells me that the Fessenden School Board of Trustees has no liability in this matter. Obviously, Ms. Abraham, you do not agree with counsel. Your biography states that you have authored a book, *Risk Management: An Accountability Guide for University and College Trustees*, first published in 2013 and a second edition published in 2020 by the Association of Governing Boards of Universities and Colleges (AGB), which encourages board oversight of enterprise risk management activities at their institution.

In his 2016 letter to the Fessenden community, Headmaster Stettler hid behind his Board of Trustees by stating:

> "I have made every effort, **with the full support of our Board of Trustees,** to model our School's values of honesty, compassion and respect in every decision and action."

Obviously, if the Board of Trustees supported Headmaster Stettler's "every effort", the Board of Trustees must have been aware of Headmaster Stettler's "every effort", reviewed his "every effort", made sure his "every effort" were implemented, and followed up on the effectiveness of his "every effort". Or was Headmaster Stettler and the Board of Trustees just lying to the Fessenden School community in order to ensure that rich people kept enrolling their kids and making donations to the Fessenden School? Lying about how well you are protecting children when you actually are doing nothing to protect children is willful and wanton misconduct. Mass. Gen. Laws c. 231 §85K, which addresses the liability of directors, officers or trustees of

educational institutions, makes trustees and officers liable when damage or injury to another person is caused by the willful and wanton misconduct of a trustee or officer.

After I read Headmaster Stettler's letters and reviewed the Fessenden School's sordid history, I was expecting to receive oodles of documents demonstrating how the Fessenden School protects children. But I only received a single page criminal history investigative report for Leung dated 2004.

Fessenden School counsel tells me that even if the Fessenden School is liable for the injuries to Fabiana McLeod and her parents, its liability is limited to $20,000. Mass. Gen. Laws c. 231 §85K, which addresses the limitation of tort liability of certain charitable organizations, states:

> It shall not constitute a defense to any cause of action based on tort brought against a corporation . . . that said corporation . . . is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars . . . Notwithstanding any other provision of this section, the liability of charitable corporations . . . shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.

On December 20, 1929, Emma B. Hart Fessenden, Frederick J. Fessenden, Jr., Frederick J. Fessenden, and E. Kirk Hart Fessenden, by their signatures, filed Articles of Organization for "The Fessenden School". At the time, these individuals were adequately represented by the law firm, Palmer and Dodge. The Articles of Organization stated "[t]he purposes for which the corporation is formed":

> The purposes for which the corporation is formed are as follows:— To conduct a school for boys in the City of Newton, Massachusetts, and to establish and maintain school buildings in connection therewith.

Fabiana McLeod is a girl, not a boy. Fabiana McLeod was not on the Fessenden campus to be in a "school". The Fessenden School School Summer English Language Learning Program is an English as a Second Language (ESL) program. Fabiana McCleod had no need to attend a school to learn how to speak English.

The Fessenden School cannot claim that the sexual assaults and rape were committed in the course of an activity carried on to "***accomplish directly"*** its charitable purpose "[t]o conduct a school for boys." Fessenden School counsel never explained how a summer program to help

Page 16
March 8, 2021

boys and girls learn English directly accomplishes directly the charitable purpose "[t]o conduct a school for boys".

If anything, the Fessenden School Summer English Language Learning Program was an activity "primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes." The Fessenden School Internal Revenue Service Form 990 for 2015 describes the mission of the Fessenden School as follows:

> THE MISSION OF THE FESSENDEN SCHOOL IS TO TEACH, NURTURE, AND CELEBRATE GROWING **BOYS**, CULTIVATING EACH STUDENT'S INDIVIDUAL POTENTIAL AND DEVELOPING IN BALANCE **HIS** MIND, CHARACTER, HEART AND BODY IN AN INCLUSIVE AND JOYFUL COMMUNITY THAT, THROUGH RIGOR, FRIENDSHIP AND SERVICE, REFLECTS FESSENDEN'S TRADITIONAL VALUES OF HONESTY, COMPASSION AND RESPECT

The Fessenden School Internal Revenue Service Form 990 for 2015 describes the program service of its charitable purpose as follows:

> THE FESSENDEN SCHOOL IS AN INDEPENDENT **BOYS** ELEMENTARY SCHOOL FOR BOTH RESIDENT AND DAY STUDENTS WITH GRADES PRE-KINDERGARTEN THROUGH NINTH THE PROGRAM HAS APPROX 500 STUDENTS OF BOTH DOMESTIC AND INTERNATIONAL ORIGIN ACADEMIC, ART AND ATHLETIC PROGRAMS ALL PLAY AN INTEGRAL PART OF EACH STUDENT'S EDUCATIONAL AND PERSONAL GROWTH

However, the Fessenden School Internal Revenue Service Form 990 for 2015 describes the Summer English Language Learning Program as a *separate* service program as follows:

> THE FESSENDEN SCHOOL SUMMER ESL PROGRAM OFFERS CHALLENGING ACADEMIC INSTRUCTION IN ENGLJSH, ALONG WITH TRAVEL, RECREATION AND CULTURAL EXCHANGE THE PROGRAM IS FIVE WEEKS LONG AND HOSTS 40 BOYS AND **GIRLS** BETWEEN THE AGES OF 10-15

On May 5, 1987 the Fessenden School amended its Articles of Organization to add the following:

> VOTED: To amend the Articles of Organization of this corporation by adding thereto the following provision:
>
>> "The personal liability of all officers and directors to the corporation or its members for monetary damages for breach of fiduciary duty as an officer or director shall be eliminated to the maximum extent permitted by law."

The Fessenden School never amended its Articles of Organization to change its charitable purpose from its original charitable purpose "[t]o conduct a school for boys". In any event, the defense of charitable immunity is not available to any of your other insureds, including the teachers, directors, and staff of the Fessenden School Summer English Language Learning Program.

**2.      United Educators has violated its own claims settlemet practices.**

United Educators is a child of the Liability Risk Retention Act (LRRA) which allowed similar institutions or businesses to form "risk retention groups" or RRGs, to share and retain liability risks. An RRG is a form of a captive insurance company, formed to meet the unique risk transfer needs of a specific type of organization or business such as educational institutions. RRGs differ from traditional commercial insurance companies. Traditional insurance companies are regulated in each state in which they do business. RRGs are licensed in one state and can serve members in all states.

United Educators is a for-profit association owned and governed by more than 1,600 independent schools and other educational entities. Each United Educators member executes a subscriber's agreement and power of attorney, appointing United Educators as its attorney-in-fact so it can exchange insurance risks with all other United Educators members.

United Educators claims that its form of ownership is "non-assessable reciprocal", meaning United Educators cannot assess its members for any additional capital contributions to compensate for adverse loss or expenses. Putting the legal gobbledygook aside, this means that United Educators' thirst for profits must depend on aggressive claims defense.

United Educators boasts that a "mission-driven team" handles claims against its insureds using a "Cool Head, Warm Heart" philosophy to legal matters. When Fessenden School counsel represented that the Fessenden School wanted to mediate this case, I was very surprised that a member of your "mission-driven team" did not contact me directly to discuss this matter. Clearly the purpose of the "mission-driven team" is not to ensure the protection of the children entrusted to United Educators insureds. Instead, the purpose of the "mission-driven team" is to obfuscate United Educators claims settlement practices.

United Educators advises its insured educational institutions to respond with a "Cool Head," and to follow the educational institutions' crisis response policies and procedures. United Educators warns its insured educational institutions that keeping a Cool Head protects the institution's reputation and financial stability. United Educators also advises its insured educational institutions to demonstrate a "Warm Heart", to show concern for people first, liability second. United Educators warns its insured educational institutions that responding with a Warm Heart promotes healing and trust and that simply put, it is the right thing for an institution to do.

Page 18
March 8, 2021

United Educators further instructs the administrators of its insured educational institutions on how to protect against liability or reputational damage after a crisis using "Cool Head" tactics. According to United Educators, administrators should use the following Cool Head tactics:

- activate the crisis response team and follow its crisis response plan

- communicate effectively with campus, community, and the media

- be cautious with expressions of responsibility and the release of private information

- conduct an investigation, keep records, and cooperate with counsel, ***if the crisis warrants***

United Educators further instructs administrators of its insured educational institutions on how to show the institution's sensitivity during and after the crisis using "Warm Heart" tactics. According to United Educators, administrators should use the following Warm Heart tactics:

- Be generous with support and sympathy. Expressing sympathy is not the same as accepting responsibility. Never be afraid to comfort someone in a crisis.

- Communicate in a timely, honest manner.

- Withholding information and evading clear answers is not advised. If the crisis touches one family or group, facilitate communication by designating a liaison between the institution and those affected.

- Offer counseling to the campus and community. People need to talk after facing a crisis or tragedy. Professionals should be available to assist with the healing process.

- Offer assistance. Ask those affected what they need. Consult with religious or cultural advisors. Make recovery easier by coordinating or making travel arrangements.

- Avoid self-inflicted harm. For example, ensure families do not receive tuition bills or overdue library book fines after a tragedy.

- Stay in touch after the crisis subsides. Check in on families and the community. Plan campus memorials if asked to do so, or in consultation with families.

Apparently, United Educators does not consider the rape of a child by the co-director of the Fessenden School Summer English Language Learning Program in a Fessenden School dormitory to be a crisis warranting investigation.

Apparently, United Educators does not consider the co-director of the Fessenden School Summer English Language Learning Program chasing a child and sexually assaulting her in a stairwell on the Fessenden School campus to be a crisis warranting investigation.

Apparently, United Educators does not consider the rape of a child by the co-director of the Fessenden School Summer English Language Learning Program in a New York hotel room while on a Fessenden School sponsored fieldtrip to be a crisis warranting investigation.

Apparently, United Educators does not consider the co-director of the Fessenden School Summer English Language Learning Program providing alcohol and marihuana laced brownies to child on the Fessenden School campus to be a crisis warranting investigation.

Apparently, United Educators does not consider the co-director of the Fessenden School Summer English Language Learning Program driving a child from her home in New Hampshire, across a state line, to the Fessenden School in Massachusetts and molesting her along the way in his vehicle to be a crisis warranting investigation.

Sounds more like a Brainless Head, Frozen Heart approach. This so called "Cool Head, Warm Heart" baloney is just a ploy to protect the reputation and financial stability of United Educators members. The children your member educational institutions are morally, ethically, and legally obligated to protect be damned.

Fessenden School counsel has provided no information concerning an "investigation", except to say that the Fessenden School could not have suspected its co-director the Fessenden School Summer English Language Learning Program was a child rapist because he was a very smooth and slick pedophile.

### *The injuries suffered by Fabiana McLeod and her parents.*

Massachusetts law dictates that a valid 93A demand letter must identify the injuries suffered by the claimants. Brandt v. Olympic Const., Inc., 16 Mass. App. Ct. 913 (1983), quoting York v. Sullivan, 369 Mass. 157, 162 (1975).

Ms. Abraham, according to the United Educators' web site, you are "responsible for leading the strategic direction of [United Educators] and the execution of its operational plans." You boast about how, under your leadership, United Educators has been "consistently profitable, produced high return on equity, and maintained the financial strength and stability". I am sure your executive compensation package reflects your accomplishments.

On the United Educators web site, you repeatedly promote yourself as a "woman":

- A "Woman in Insurance Leadership," Insurance Networking News, 2011

- A "Woman to Watch" as a Leader of Change, Business Insurance, 2006

- Insurance Woman of the Year, The Association of Professional Insurance Women, 2004

Page 20
March 8, 2021

- One of the 100 Leading Women in the Field of Insurance, Business Insurance, 2004

You represent all the things that Fabiana McCleod will never be because of the sexual assaults and rapes perpetrated by the co-director of the Fessenden School Summer English Language Learning Program. Unlike you, Fabiana McLeod will never reach her full potential. She was a strait-laced, "A" student before the co-director of the Fessenden School summer program repeatedly sexually assaulted and raped her. After the rapes, her grades plummeted, her behavior deteriorated, she began to use drugs and alcohol, and she began cutting her body with knives and burning her skin with a blow torch. Her innocence was stolen from her. Her self-esteem was stripped from her. Her confidence was destroyed. As a result of your insured's tortious conduct, Fabiana lost her chance to be like you. As a result of her being repeatedly raped and sexually abused, Fabiana McLeod most likely will never sit on Boards, cash huge paychecks, or sip wine in a Versace outfit at the corporate Holiday party.

We all know what sexual abuse does to a child and what sexual abuse does to a woman later in her life. There is no cure. There is no medicine. This should not surprise you, United Educators, the Fessenden School, or any of United Educators member institutions. You may call yourselves "Educators" but being an Educator of children also means being a Protector of those same children. I think that it is time for you to walk the talk. The title of "Woman" is not a promotional prop created for your exclusive use to propel yourself up the corporate ladder.

Fabiana McLeod's specific injuries include:

- Post-Traumatic Stress Disorder (PTSD)

- Defensive adaptations that interfere with normal development

- Compromised ability to appraise reality accurately and to self-regulate mood and affect

- Interrupted brain development

- Physiological changes in the limbic-hypothalamic-pituitary-adrenal axis and serotonin system, the neurobiological stress response systems implicated in mood, anxiety, and impulse control disorders, causing persistent psychopathology

- Substance abuse

- Changes in mood and affect

- Isolating

- Defiant behaviors

Page 21
March 8, 2021

- Changes in appetite and subsequent negative health implications

- Change in sleep habits and subsequent negative health implications

- Negative body-image

- Guilt and self-shame

- Self-blame/ self-doubt

- Low self-esteem

- Trust issues

- Suicide attempts and self-injurious harm

- Failure to attain her full earning potential and work capacity

- Lifetime pain and suffering

- Lifetime of being ostracized as the girl who was violated

Fabiana McLeod's parents have also been damaged by the rapes and sexual assaults of their daughter. Mass. Gen. Laws c. 231 § 85X allows damages to parents for loss of consortium of a dependent child. Since 2016, Mark and Karina McLeod's lives have been shattered by the effects of the atrocities committed against Fabiana. Mark and Karina McLeod established a beautiful family in a quaint single-family home in Concord New Hampshire. The McLeod family has lived in Concord for generations. Now the family unit has disintegrated. Mark and Karina are headed for divorce.

I understand United Educator's counsel will respond to this 93A demand letter claiming that although this letter "purports" to be a valid 93A demand letter, the letter does not meet the statutory standards to entitle Fabiana Mcleod and her parents to any relief. I also realize that no defense lawyer has ever met a 93A demand letter that meets the statutory standards. So please, do not belittle the McLeod family further or add to your deceptive practices by concocting defenses that cannot be legally supported.

I understand that United Educators may not accept liability pursuant to 176D or 93A by claiming that it is some sort of self-insurer. Bingham v. Supervalu, Inc., 806 F.3d 5 (1st Cir. 2015). However, United Educators is a captive insurer. Mass. Gen. Laws c. 175, § 174G(c) defines captive insurers:

> (c) . . . captive insurers are insurance companies owned by
> another organization whose exclusive purpose is to insure risks of
> the parent organization and affiliated companies or, in the case of
> groups and associations, insurance organizations, owned by the
> insureds, whose exclusive purpose is to insure risks to member
> organizations and group members and their affiliates.

In Massachusetts, captive insurers are subject to 176D liability. Lemos v. Electrolux N. Am., Inc., 78 Mass. App. Ct. 376 (2010). In addition, 15 U.S.C. § 3902(a)(1)(A), concerning "[e]xemptions from State laws, rules, regulations, or orders" of RRGs, allows States to require RRGs to "comply with the unfair claim settlement practices law of the State". Again, please do not belittle the McLeod family further or add to your deceptive practices by concocting defenses that cannot be legally supported.

### *The relief Fabiana McLeod and her parents are seeking*

Massachusetts law dictates that a valid 93A demand letter must state what relief the plaintiffs are seeking. Brandt v. Olympic Const., Inc., 16 Mass. App. Ct. 913 (1983), quoting York v. Sullivan, 369 Mass. 157, 162 (1975).

The co-director of the Fessenden School Summer English Language Learning Program functionally ended Fabiana Mcleod's life and destroyed the family that Mark McLeod and Karina McLeod had built in idyllic Concord, New Hampshire.

In addition, Fabiana McLeod has claims under Federal sex trafficking laws. 18 U.S.C. § 1595 allows for civil remedies for victims of sex trafficking against

> "the perpetrator (or whoever knowingly benefits, financially or by
> receiving anything of value from participation in a venture which
> that person knew or should have known has engaged in an act in
> violation of this chapter [18 USCS §§ 1581 et seq.]) in an
> appropriate district court of the United States and may recover
> damages and reasonable attorneys fees."

The Fessenden School received something of value from Fabiana McLeod. She was doing administrative tasks for the Fessenden School and the Fessenden School used her image in a web site to promote its Summer English Language Learning Program. In addition, the Fessenden School knew or should have known that Fabiana was being trafficked for sex.

The Fessenden School 1995-1996 RE-ENROLLMENT CONTRACT, signed by students' parents, contains a "PHOTOGRAPHIC RELEASE" which states,

Page 23
March 8, 2021

> We agree, without compensation, to permit The Fessenden
> School, its agents, assigns, employees, and students to use our
> son's photographic image, likeness or audio **for the use and
> benefit** of The Fessenden School in its publications and other
> promotional material. This release shall be effective in perpetuity
> unless specifically revoked in writing.

Fabiana Mcleod's parents signed no such release for the Fessenden School to use Fabiana's image for its benefit.

18 U.S.C. § 2255(a) allows for civil remedies for personal injuries"

> "(a) In general. Any person who, while a minor, was a victim of a
> violation of section . . . 1590, . . . 2421, 2422, or 2423 and who
> suffers personal injury as a result of such violation, regardless of
> whether the injury occurred while such person was a minor, may
> sue in any appropriate United States District Court and shall
> recover the actual damages such person sustains or liquidated
> damages in the amount of $150,000, and the cost of the action,
> including reasonable attorney's fees and other litigation costs
> reasonably incurred. The court may also award punitive damages
> and such other preliminary and equitable relief as the court
> determines to be appropriate."

§ 1590(a) addresses the transportation of Fabiana for labor and services and her subsequent "aggravated sexual abuse"

§ 2421(a) addresses the transportation of Fabiana with the intent that she "engage in any sexual activity".

§ 2422(a) address the coercion and enticement of Fabiana to travel in interstate commerce to engage in "sexual activity".

§ 2423(a) addresses the transportation of minors with intent to engage in criminal sexual activity.

The federal statutes allow for punitive damages and attorneys fees.

For the destruction of Fabiana's life and the destruction of the McLeod family unit, Fabiana McLeod and her parents are seeking $100 million. That is correct, a "1" followed by eight (8) zeroes. The $10 million/ $25 million "let's settle this without litigation" demand is now off the table. This letter begins a new phase – the litigation phase.

You may consider this demand "excessive". "Even excessive demands on the part of a claimant, however, do not relieve an insurer of its statutory duty to extend a prompt and equitable offer of settlement once liability and damages are reasonably clear. They may be considered as part of

Page 24
March 8, 2021

the over-all circumstances affecting the amount that would qualify as a reasonable offer in response, but the underlying duty to effectuate a prompt, fair, and equitable settlement remains unaltered. <u>Bobick v. United States Fid. & Guar. Co.</u>, 439 Mass. 652, 662 (2003).[1]

According to the National Crime Victim Bar Association, verdicts in the tens of millions of dollars, or even hundreds of millions of dollars, are not uncommon. These verdicts show that jurors care about women. These verdicts also show that jurors are able to determine the value of the pain caused by the rapes and the sexual assaults.

In the past, women who suffered sexual assault did not pursue justice, choosing instead to put the trauma, shame, and guilt behind them. In the past, women who were raped did not want their name to appear on a court docket. Fabiana McLeod is willing to have her name on the court docket. She wants to show other victims of child sexual assaults and rapes that these crimes will not occur if victims come forward.

In 2018, a Georgia jury awarded a $1 billion verdict to a girl who was raped by a security guard when she was fourteen years old, the same age as Fabiana when she was raped. The facts of this case are just so much in Fabiana's and her parents' favor. Fabiana is not afraid to serve these facts on a platter to a jury.

To satisfy the requirement that the demand letter refer to the consumer protection act, the letter must contain at least ***one*** of the following six statements: (1) any express reference to c. 93A; (2) any express reference to the consumer protection act; (3) any assertion that the rights of the claimants as consumers have been violated; (4) any assertion that the defendant has acted in an unfair or deceptive manner (G.L. c. 93A, § 2[a]); (5) any reference that the claimants anticipate a settlement offer within thirty days or (6) any assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied. <u>Cassano</u>, 20 Mass. App. Ct. at 350-51.

Therefore, to be perfectly clear:

1. This is a statutory letter pursuant to Mass. Gen. Laws c. 93A.

2. This is a statutory letter pursuant to the Massachusetts Consumer Protection Act.

3. This is a statutory letter to assert that the rights of Fabiana McLeod, Mark McLeod, and Karina McLeod as consumers, have been violated.

4. This is a statutory letter to assert that United Educators has acted in a deceptive manner.

---

[1] While school counsel has produced Declarations Pages for the policy year 2014-2015, the actual United Educators policy has not been provided.  Neither has the Declarations Pages or the actual United Educators policy for the year 2015-2016 been provided.  It is our position that both policies are exposed as the abuse suffered by Fabiana extended over these two years and constituted multiple occurrences.

Page 25
March 8, 2021

5. The claimants, Fabiana McLeod, Mark McLeod, and Karina Mc.Leod, anticipate a settlement offer within thirty (30) days.

6. This is a statutory letter to assert that the claimants, Fabiana McLeod, Mark McLeod, and Karina McLeod, will pursue multiple damages and legal expenses pursuant to Mass. Gen. Laws c. 93A.

I look forward to your response.

Very truly yours,

Domenic Paolini, M.D., M.B.A., J.D.

DP/hc

Attachments:   letter to counsel dated August 13, 2020
                letter to counsel dated September 11, 2020
                letter to counsel dated October 23, 2020
                letter to counsel dated February 18, 2021
                letter to counsel dated February 26, 2021