Attorney Domenic Paolini
Attorney Richard Haley
Paolini & Haley
400 Tradecenter, Suite 5900
Woburn, MA 01801
dpaolini@paoliniandhaley.com
rhaley@paoliniandhaley.com

Re: McLeod v. The Fessenden School

Dear Attorney Paolini:

United Educators received your letter of March 8, 2021, which purports to be a demand made pursuant to Massachusetts G.L. c. 93A and c. 176D. Please be advised that United Educators denies that it has engaged in any conduct that violates these statutes. The law recognizes an insurer's duty to provide a defense to its insured, and that it is entitled to a fair opportunity to investigate and consider the merits of a claim.

Pursuant to Massachusetts G.L. c.175, §112C, United Educators confirms that Fessenden is an insured under Policy No. CGL201400448800. This policy had effective dates of 9/1/2014 to 9/1/2015. The Policy provides a primary limit of $1,000,000 per occurrence, subject to the Policy terms and conditions. Fessenden is also an insured under Policy No. GLX201400448800. This policy likewise had effective dates of 9/1/2014 to 9/1/2015. This is an excess policy providing a limit of $25,000,000, subject to the Policy terms and conditions. The declarations pages are enclosed. United Educators is presently unaware of other liability coverage that may be applicable.

You state in your letter that your prior settlement demands of $10 million and $25 million are now off the table and, instead, that the McLeods have increased their settlement demand to $100 million because you are in the litigation phase. This is regrettable. Fessenden and United Educators would like to avoid litigation. We and our insured have acknowledged the allegations you have made and appreciate your desire for resolution. As a show of good faith, Fessenden has voluntarily provided available information in response to your requests, and both United Educators and Fessenden offered to participate in pre-suit mediation with no conditions – an offer that remains open if your clients desire.

As our conduct to date demonstrates, both Fessenden and United Educators are committed to seeking a fair resolution of the dispute and appreciate the cooperation that we have received from you thus far, including the materials that you have provided to assist with our investigation. However, as I'm sure you can appreciate, given the nature of your clients' allegations and the demands that have been made, a further investigation is necessary to address questions regarding liability and damages that remain open, particularly given the new allegations that you included in your March 8 letter.

In that regard, we have the following questions regarding the new allegations in your letter, answers to which are essential to our ongoing investigation. The sooner we and Fessenden receive the information and documents indicated below, the better position we will be in to resolve this matter in a mutually agreeable manner.

1. You indicate that staff and students at the Rundlett Middle School in Concord, New Hampshire noticed Mr. Leung's favoritism of Ms. McLeod in the fall of 2014. Can you provide the names of these staff and students? Can you provide the name of the female student who complained to school authorities about Mr. Leung's behavior? We would also like to obtain Ms. McLeod's Rundlett School records, and any assistance you could provide in that regard would be appreciated.

2. You state that Mr. Leung's relationship with Ms. McLeod turned sexual in February 2015. This was prior to her first involvement with the Fessenden Summer English Learning Program. We would like to have a better understanding of these circumstances. How and where did this occur? Were there other inappropriate interactions or assaults during this time? Did Mr. Leung ever threaten Ms. McLeod?

3. You state that prior to bringing Ms. McLeod to Fessenden, Mr. Leung discussed the program with Mr. McLeod. It would be helpful to the investigation if Mr. McLeod would agree to an examination under oath so that we have a better understanding of the circumstances that led to her decision to participate in the program and other details that are discussed in subsequent numbered sections below. Similarly, statements from Mrs. McLeod and Ms. McLeod would also be helpful.

4. You have indicated that Mr. Leung would often separate Ms. McLeod from other children in the program and have her work with him in his Fessenden office. Can you provide more details regarding these separations? How often did this occur? Did these meetings ever involve other teachers or program participants? Are there any witnesses to this? Were any complaints made to Fessenden employees or administrators?

5. You state that alcohol and marijuana laced brownies were provided to the "Concord Girls" during after-hours gatherings of teachers and proctors. Would you please identify the teachers and proctors who were involved? Can you identify the room(s) in which such gatherings took place? Would you please identify the Concord Girls who participated? Do you know of any complaints about these gatherings?

6. You have indicated that on several occasions during the summer of 2015 that Mr. Leung came to Ms. McLeod's dorm room and fondled her in the presence of her roommate. Can you identify this person? Have you taken any statements from her? You state that Mr. Leung subsequently began to enter her room, barricade the door and assault her. Are there any individuals who might have been in a position to notice Mr. Leung enter her room? Are you aware of any person who might have been in a position to observe Mr. Leung or Ms. McLeod after these assaults occurred?

7. You state that Mr. Leung continued to pursue Ms. McLeod during the 2015-2016 academic year at the Rundlett School. Can you describe the inappropriate conduct? Did it involve sexual assaults? Where did this occur? Did this occur on school property, or elsewhere? How often did it occur? Are you aware of any individuals who may be witnesses to episodes of inappropriate conduct? Were any complaints made? Who was responsible for supervising Mr. Leung during this time?

8. You indicate that the frequency and intensity of Mr. Leung's assaults escalated during the 2016 summer program. Are you aware of any individuals who may have made observations of Ms. McLeod during this time? Could you please identify the Fessenden teachers who complained about Leung's relationships with the "Concord Girls," and his open and notorious closeness and favoritism of Ms. McLeod? Would you please identify the "Concord Girl" who told you that Mr. Leung's relationship was not "weird enough" to do anything about? Could you identify the counselor who was particularly concerned about their relationship?

9. You state that Ms. McLeod was raped by Mr. Leung during a field trip to New York City, and afterward he angrily shoved her out of his room. Have you spoken with any of the chaperones on that trip? Have you spoken with any of students who participated on that trip? Are you aware of any person who might have witnessed Ms. McLeod's distress? Does Ms. McLeod recall the name of her roommate on that trip? Did Ms. McLeod ever mention this rape to any of her fellow students or friends; either at Fessenden or at back at home? Did she ever mention to anyone that Mr. Leung was acting inappropriately with her?

10. You also mention that a few days after the New York trip, Mr. Leung emailed Mr. McLeod. Would it be possible for you to provide copies of any emails or texts exchanged between Mr. Leung and Mr. or Mrs. McLeod? Did Mr. Leung ever email or text Ms. McLeod? If so, could you please provide copies.

11. You indicate that Mr. Leung received a receipt at his school email address for a hat he purchased for Ms. McLeod. Could you identify the school and the address?

12. Mr. Leung apparently transferred to Concord High School in September 2016 at the same time as Ms. McLeod. We would like to obtain Ms. McLeod's Concord High academic records, records regarding her class schedule, and Mr. Leung's involvement in her academics. Did Mr. Leung act in any inappropriate fashion during her time at Concord High? Did Mr. Leung sexually abuse Ms. McLeod during her high school years? If so, did this occur in a school setting? Did it occur any place else? Could you please identify any individuals who may have witnessed Mr. Leung's interactions with Ms. McLeod during this time? We are also seeking police reports/investigations. However, we understand that access will not be given until after Mr. Leung's criminal trial.

13. United Educators would appreciate the opportunity to secure Ms. McLeod's medical records and bills directly from her care providers. Will you ask Ms. McLeod to provide authorizations permitting us to obtain complete medical records for the period January 1, 2013 to the present? We would like to obtain authorizations to obtain her records from Cheshire Academy and the University of New Haven. We can provide authorizations for your convenience if you would like.

14. You have indicated that you have retained three experts who support Ms. McLeod's claims. We understand these are Charol Shakeshaft, Ph.D., Barbara Ziv, M.D., and Leigh Horne-Mebel, LICSW. We appreciate the summaries that you provided in your February 18, 2021 letter. However, we respectfully request access to their complete reports and supporting materials. Fessenden and United Educators are prepared to consider any expert opinion(s) that you may make available.

United Educators intends to continue its investigation at this time. We look forward to your continued cooperation. Please forward any additional information that you would like United Educators to consider. If you have any other questions, please do not hesitate to contact me.

Sincerely,

Dena L. Kaufmann, Esq.
Senior Resolutions Counsel
United Educators