UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Fabiana Hillary McLeod, et al, | ) |
| Plaintiffs, | ) |
| vs. | ) C.A. No. 1:21-cv-10807 |
| The Fessenden School, et. al., | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF INDIVIDUAL TRUSTEE DEFENDANTS'
MOTION TO DISMISS COMPLAINT**

I. Introduction

This case arises from alleged acts of sexual abuse and molestation perpetrated on Fabiana Hillary McLeod by her teacher, Primo "Howie" Leung. Some of this abuse allegedly occurred during a summer program at The Fessenden School. The Plaintiffs' Complaint contains claims for gross negligence and loss of consortium against Fessenden's trustees seeking to hold them legally liable because Leung abused Ms. McLeod. These claims are not viable and should be dismissed pursuant to Rule 12(b)(6). The Complaint allegations are insufficient to demonstrate that the individual trustees owed a legal duty in the circumstances, or that a jury could reasonably find that their alleged nonfeasance constitutes gross negligence.[1]

II. The Complaint

Defendant, Primo "Howie" Leung, was a teacher at the Rundlett Middle School in Concord, New Hampshire, between September, 2013 and June, 2016. (*See* Complaint, ¶ 106).

---

[1] The Plaintiffs have alleged a higher degree of culpability, despite the absence of factual allegations to support such a standard, because the Trustees are immune from liability for ordinary negligence pursuant to M.G.L. c. 231, § 85K.

During the summers of 2015 and 2016, Leung also worked as a "teacher, counselor, and co-director" in the English Language Learners ("ELL") summer program at the Fessenden School, a private school for boys in West Newton, Massachusetts. (*Id.*, ¶¶ 2-3, 113-116). The ELL program was an English immersion program which "allowed international boys and girls to live on Fessenden's campus for a few weeks during the summer and to participate in activities to improve their English language skills and to learn about other cultures." (*Id.*, ¶¶ 113, 117-119).

The plaintiff, Fabiana McLeod ("Fabiana"), was a resident of Concord, NH, and was a student at the Rundlett Middle School between 2013 and 2016. (*Id.*, ¶¶ 19, 108). In February, 2015, "Leung's relationship with Fabiana turned sexual." (*Id.*, ¶ 112). Subsequently, during the summers of 2015 and 2016, when Fabiana was 13 and 14 years old, Leung "recruited" Fabiana and other female middle school students from Concord to act as uncompensated "'helpers', 'volunteers', 'part time students' and/or 'proctors-in-training'" for the ELL program. (*Id.*, ¶¶ 1, 120, 125-126). Leung allegedly sexually assaulted Fabiana during the summers of 2015 and 2016 at Fessenden, and "continued to pursue" her during the intervening school year in New Hampshire. (*Id.*, ¶¶ 132-151).

At some point, an unidentified counselor and some of the other middle school volunteers from Concord allegedly "approached Leung and said, 'We know you're close with her [i.e., Fabiana], but it looks really strange and people would be concerned.'" (*Id.*, ¶ 158). However, the counselor did not report any such concerns. (*Id.*).

In the fall of 2016, Fabiana entered high school in Concord. (*Id.*, ¶¶ 4, 163). Leung also arranged to be transferred to the same high school at that time. (*Id.*, ¶ 164). Two years later, in December, 2018, students notified school authorities that they had observed Leung "acting inappropriately with a student in his vehicle." (*Id.*, ¶ 5). The incident was reported to police, who

began an investigation. (*Id.*, ¶¶ 5-6). When she was interviewed in connection with the investigation, Fabiana "revealed how she had been sexually assaulted and raped by Leung." (*Id.*, ¶ 6). Leung was arrested in March, 2019, and currently faces a number of criminal charges. (*Id.*, ¶ 7).

The Complaint names thirty-two individuals who have served on the School's Board of Trustees, along with two anonymous placeholders ("Trustee Doe" and "Trustee Roe"). (*Id.*, ¶¶36-67). No factual allegations in the Complaint mention any of the Trustees by name, or refer to any specific acts or omissions of the individual Trustees, and/or the Board as a whole. Instead, the Complaint cites Headmaster Mr. David Stettler's assertion, in communications with the Fessenden community regarding the school's response to allegations of abuse during earlier decades, that he had "made every effort, with the full support of our Board of Trustees, to model our School's values of honesty, compassion, and respect in every decision and action." It generally alleges that the Trustees "must have been aware of Headmaster Stettler's 'every effort', reviewed his 'every effort', made sure his 'every effort' was implemented, and followed up on the effectiveness of his 'every effort'." (*Id.*, ¶¶ 93-95). It asserts that the Trustees "must also have been acutely aware, or should have been aware," that making such an assertion, without taking adequate steps to protect children at the School, "could cause serious harm" to such children. (*Id.*, ¶¶ 96-97).

There is no allegation that the Plaintiffs received and/or reviewed any of Mr. Stettler's correspondence with the Fessenden community, or that they relied to their detriment on any of the assertions therein. Likewise, there is no allegation that any of the individual Trustees had any involvement with the ELL program, or that any of them were ever notified of concerns or allegations of misconduct in connection with Fabiana, Leung, or the ELL program.

Claims for "gross negligence and willful and wanton misconduct" (Counts XVI through

L) are asserted against the Fessenden Trustees. The Plaintiffs allege that Headmaster David Stettler made "misrepresentations" in letters to the Fessenden community, "claim[ing] that he had made every effort to protect children at The Fessenden School" despite having allegedly "made little or no effort" to do so. (Complaint, ¶¶ 250-253). Based upon this conclusory allegation, they claim that the Trustees "knew or should have known that misrepresentations that The Fessenden School was protecting children, when in actuality it had taken little or no action to protect children, would cause harm to children." (*See, e.g.,* Complaint, ¶ 269). Plaintiffs claim that Fabiana was sexually assaulted as a result of this conduct, which is described as "gross, willful, and wanton misconduct." (*See, e.g.,* Complaint, ¶ 270).

In Counts LI and LII, Fabiana's parents, Mark and Karina McLeod, assert claims against "all defendants" for loss of consortium.

### III.  Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants may seek dismissal of a complaint for "[f]ailure to state a claim upon which relief can be granted." While a complaint "does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Absent "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief, the plaintiff's complaint is subject to dismissal. *Id.*, 550 U.S. at 557. "Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action." *Murray v. Uber Technologies, Inc.*, 486 F.Supp.3d 468, 474 (D.Mass. 2020).

IV.     Argument

A. Plaintiffs Cannot Establish That The Trustees Owed Them A Legal Duty.

As a general rule, there is no duty to protect others from the criminal acts of a third party, unless a "special relationship" is deemed to exist between the parties which warrants the imposition of such a duty, and the criminal conduct is reasonably foreseeable. *Kavanagh v. Trustees of Boston Univ.*, 440 Mass. 195, 201, 795 N.E.2d 1170, 1177(2003); Restatement (Second) of Torts § 314A. "Without evidence that the individual defendants participated in acts causing injury to the plaintiffs, there [is] no breach of duty to the plaintiffs." *Addis v. Steele*, 38 Mass. App. Ct. 433, 439, 648 N.E.2d 773, 777 (1995) (corporate officer and agent not personally liable for failure to prevent arson). Unless an agent or officer actively takes part in the commission of a tort by the employer, he/she is not personally liable to third parties for failure to carry out the employer's purposes. *Id*. at 440, citing cases and authorities.

Here, there are no specific allegations linking the abuse inflicted by Leung to anything the individual trustees did or failed to do. Simply making a conclusory assertion that they owed a general obligation to protect children will not suffice, and fails to state a valid cause of action against them. *See, e.g., Lyon v. Morphew*, 424 Mass. 828, 833, 678 N.E.2d 1306, 1309 (1997) (officer's "general supervisory role" did not support individual liability for removal of safety railing); *Libby v. Park, Marion and Vernon Streets Operating Co., LLC*, 278 F.Supp.3d 501 (D.Mass. 2017) (denying motion to add nursing director as defendant in case involving choking death of unattended patient, because the proposed amended complaint "failed to plead any facts which tie [her] to the incident that led to [decedent's] death," and "[t]here are no facts alleged from which the court can determine the basis of her potential liability").

The case of *Doe v. Emerson College*, 153 F.Supp.3d 506 (D.Mass. 2015) is instructive, and

should be followed here.  In that case, the plaintiff sued individual college administrators after she was sexually assaulted during an off-campus party.  The court granted judgment on the pleadings in favor of the individual defendants, explaining its ruling as follows:

> The complaint alleges that the individual defendants, as administrators, owed a "duty to implement and enforce the school's published guidelines, codes, regulations, and policies designed to protect [Emerson] students." … The complaint also alleges that the defendants breached that duty by "fail[ing] to take reasonable precautions to safeguard [Emerson] students." ...
>
> Massachusetts does not, however, impose a common-law or statutory duty on administrators to enforce university policies. *See Bash v. Clark Univ.*, 2006 WL 4114297, at *5 (Mass.Super. Nov. 6, 2006)].  Furthermore, and in any event, the complaint fails to allege specific acts of negligent conduct by the individual defendants.  In fact, the complaint barely mentions the individual defendants at all.

*Id*. at 515-16 (record citations omitted).

The same is true here.  Although the Board of Trustees has responsibility for the overall management of Fessenden, the Trustees did not have a supervisory role over the health and safety of Fessenden students, much less over volunteers assisting in the operation of a summer program held on the school's campus.  There are no allegations in the Complaint to suggest that individual trustees exercised any oversight of the ELL Program, much less that they committed any specific acts which resulted in harm to the plaintiffs.  *Contrast Doe v. Town of Stoughton*, 2020 WL 4431569 at *7 (D.Mass. 2020) (school administrator could be found negligent, where student and teacher reported concerns about relationship between plaintiff and teacher, and administrator failed to conduct an adequate investigation or alert parent to concerns).  Where there is "no evidence that [an individual defendant] 'had been guilty of any negligent misfeasance (as contrasted with nonfeasance) causing injury to the … plaintiff,'" no valid basis for individual liability exists.  *Addis, supra* at 440, quoting *Buck v. Clauson's Inn at Coonamessett, Inc.*, 349 Mass. 612, 614-15, 211 N.E.2d 349, 351 (1965).  An employee or officer "is not liable for nonfeasance to anyone but

his principal or employer," *Leavitt v. Glick Realty Corp.*, 362 Mass. 370, 374, 285 N.E.2d 786, 788 (1972), and one "who takes no part in the commission of the tort is not personally liable to third persons for the torts of other agents, officers or employees of the corporation." *Addis, supra* at 440, quoting Fletcher, *Private Corporations* § 1137, at 300 (1994).

B. <u>The Complaint Allegations Do Not Support Valid Claims For Gross Negligence Or Willful And Wanton Misconduct Against The Trustees.</u>

The Plaintiffs' claims against the Trustees alleging "gross negligence and willful and wanton misconduct" are based upon communications from Headmaster Stettler to the Fessenden community written in 2011, 2016 and 2018. (Exhibits 1-3 to Complaint). Plaintiffs characterize these as "misrepresentations" and the letters as a "publicity stunt," claiming that the school "made little or no effort to protect children." Even if these allegations were true – which the Fessenden Defendants vigorously dispute – they would not support a valid claim against the individual Trustees for "gross negligence and willful and wanton misconduct." Based upon the same legal principles discussed above, there is no valid basis upon which to hold individual trustees liable for torts in which they did not personally participate. *See, e.g., Boyd v. Camardo*, 65 Fed. Appx. 326, 328 (1st Cir. 2003) (absent evidence that corporate officer "participated in the creation or submission of the advertisements," his position "is not enough to render him liable for [the corporation's] alleged misrepresentations in the advertisements").

Additionally, the Complaint contains no allegations that might meet the standard of proof for "willful, wanton or reckless conduct" or "gross negligence". The former requires proof of intentional conduct involving a high degree of likelihood that substantial harm will result. It requires a showing that the defendant knowingly or intentionally disregarded an unreasonable risk, and that this risk involved a high degree of probability that substantial harm would result to the plaintiff. The plaintiffs have the burden to establish that harm was highly probable, not merely

possible. *Manning v. Nobile*, 411 Mass. 382, 387, 582 N.E.2d 942, 946 (1991). Their Complaint contains no allegations to suggest that the Trustees acted knowingly or intentionally. No allegation in the Complaint plausibly suggests that the Trustees had any knowledge that Fabiana's participation in the ELL program involved a risk with a high probability that substantial harm would result to her.

"Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. . . . It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to . . . utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others." *Altman v. Aronson*, 231 Mass. 588, 59, 121 N.E. 505, 506 (1919). No allegation made in the Complaint against the individual Trustees rises to these standards. Drawing all reasonable inferences in favor of the Plaintiffs, allegations of inadequate performance of their responsibilities as Trustees "makes out, at worst, only ordinary negligence." *Brandt v. Davis*, 98 Mass.App.Ct. 734, 742, 159 N.E.3d 191, 198 (2020). Such allegations are insufficient to state a viable claim for gross negligence.

C. <u>The Consortium Claims Fail Because the Underlying Claims Are Not Viable.</u>

Counts LI and LII assert claims for loss of parental consortium on behalf of Mark and Karina McLeod. Because the underlying claims are without merit, the consortium claims premised upon the same allegations are also subject to dismissal. *See, e.g., Sena v. Com*., 417 Mass. 250, 264, 629 N.E.2d 986, 994 (1994).

V. <u>Conclusion</u>

For the foregoing reasons, the individual Trustee defendants: Ian Loring; Michael Mach;

Michael Murray; Jeffrey Allen; Christopher Bartel; Melisa Berman; Stephanie Bucci; Tara Ciongoli; Bruce Dayton; Edward Denoble; Robert Dickey; Jennifer Mugar Flaherty; Charles Fadel; Keith Gelb; Craig Gemmel; Michael Gordan; Grace Hoffmann; Solomon Kumin; Susan Levine; Pamela Lomax; Mark Moore; Elizabeth Munro; Peter Mulderry; V.G. Narayanan; Christian Nolen; Steven Peck; Rachel Skiffer; Thomas Roberts; Christine Todd; Davide Visco; Robert Waldron; Jennifer Stier; Peter Welch; Trustee Doe; and, Trustee Roe, respectfully request that their motion be ALLOWED, and that the Plaintiffs' Complaint against them be DISMISSED.

By their attorneys,

*/s/ Robert P. Powers*

Robert P. Powers, BBO #544691
rpowers@melicklaw.com
Michael J. Mazurczak, BBO #555106
mmazurczak@melicklaw.com
Lauren C. Roche, BBO: #707661
lroche@melicklaw.com
Melick & Porter, LLP
One Liberty Square, 7th Floor
Boston, Massachusetts 02109
Telephone: (617) 523-6200

## CERTIFICATE OF SERVICE

I, Robert P. Powers, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Domenic Paolini, Esq.
Richard M. Haley, Esq.
Paolini & Haley
400 Tradecenter Drive, Suite 5900
Woburn, MA 01801

*/s/ Robert P. Powers*

Robert P. Powers

Dated: August 10, 2021