# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **FABIANA HILLARY MCLEOD,**<br>**KARINA MCLEOD, and MARK MCLEOD,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**PRIMO "HOWIE" LEUNG, THE FESSENDEN**<br>**SCHOOL, UNITED EDUCATORS, and 46**<br>**others**<br><br>**Defendants** | **Civil Action No.:**<br>**1:21-cv-10807** |

### PLAINTIFFS' OPPOSITION TO
### DEFENDANT PRIMO LEUNG'S MOTION TO DISMISS COUNTS VII, VIII AND LXI
### FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### and

### PLAINTIFF FABIANA HILLIARY MCLEOD'S CROSSCLAIM TO ADD AN
### ADDITIONAL COUNT TO THE PLAINTIFFS' COMPLAINT FOR DEFENDANT PRIMO
### LEUNG'S VIOLATION OF HER CIVIL RIGHTS

***Concerning Mr. Leung's Argument that Counts VII and VIII Must Be Dismissed***
***Because Plaintiffs Did Not File First At The Massachusetts Commission Against***
***Discrimination***

Defendant Leung's argument is "[s]ince the plaintiffs failed to follow the required

administrative procedures where violations of Chapters 151B and 151C are alleged, Counts VII

and VIII must be dismissed." In support of his argument, Defendant Leung relies on Judge

Tauro's ruling in <u>Adams v. E. Fisheries</u>, 2014 U.S. Dist. Lexis 203896 (D. Mass. 2014).

However, Judge Tauro's ruling is not entirely dispositive as the United States Supreme Court has

further addressed this issue ***after*** Judge Tauro's ruling.

The United States Supreme Court has addressed the issue of whether the administrative

process is a jurisdictional prerequisite to suit. In 1982, the Supreme Court held that the

administrative process is not a jurisdictional prerequisite to suit, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v Trans World Airlines, 455 U.S. 385, 393 (1982). In Baldwin County Welcome Center v. Brown, 466 U.S. 147 (1984), the Supreme Court further clarified, "[i]n Zipes, we held that the requirement of a timely filing of a charge of discrimination with the EEOC under 42 U. S. C. § 2000e-5(e) is not a jurisdictional prerequisite to a suit in district court and that it is subject to waiver and equitable tolling . . . we did not in Zipes declare that the requirement need not ever be satisfied; we merely stated that it was subject to waiver and tolling." Baldwin County Welcome Ctr., 466 U.S. 147 at 152 n.6 (1984).

In Fort Bend County v. Davis, 139 S. Ct. 1843 (2019), the United States Supreme Court finally clarified whether a precondition to suit is a mandatory claim-processing rule subject to forfeiture, or a jurisdictional prescription by holding, "In sum, a rule may be mandatory without being jurisdictional, and Title VII's charge-filing requirement fits that bill." Fort Bend County, 139 S. Ct. at 1852. Therefore, this Court has subject matter jurisdiction over Plaintiff Fabiana McLeod's c. 151B and c. 151C claims.

However, the Fort Bend County Court also clarified the judicial effect of its holding, "And recognizing that the charge-filing requirement is nonjurisdictional gives plaintiffs scant incentive to skirt the instruction. Defendants, after all, have good reason promptly to raise an objection that may rid them of the lawsuit filed against them. A Title VII complainant would be foolhardy consciously to take the risk that the employer would forgo a potentially dispositive defense." Fort Bend County, 139 S. Ct. at 1851-1852.

Since Mr. Leung has timely raised his objection, Plaintiff Fabiana McLeod voluntarily dismisses Causes of Action VII and VIII against him. Although The Fessenden School may not have timely raised an objection to Causes of Action IV and V against it, in order to streamline the pleadings and promote efficient use of judicial time, Plaintiff Fabiana McLeod also voluntarily dismisses Causes of Action IV and V against The Fessenden School.

However, see, *infra*, Crossmotion of Plaintiff Fabiana Mcleod for Leave to Amend Complaint to Add Causes of Action LXVI and LXVII, Actions Against Defendants Primo Leung and The Fessenden School For Violation of Her Civil Rights, Pursuant To M.G.L. c. 12, § 11I, (False Imprisonment And Intentional Infliction Of Emotional Distress).

### *Concerning Mr. Leung's Argument that the Complaint Fails To State A Claim Under The Trafficking Victims Protection Act, 18 U.S.C. § 1595*

### Background

In 2000, Congress passed the Trafficking Victims Protection Act (TVPA), the first comprehensive law in the United States to penalize ***the full range*** of human trafficking offenses. Congress reauthorized the TVPA in 2003, adding a civil cause of action, codified at 18 U.S.C. § 1595, allowed trafficking victims to sue their traffickers for money damages in federal court. The new law initially opened the civil courthouse doors to victims of only select violations of the TVPA, but the TVPRA's reauthorization in 2008 ***expanded*** the private right of action to encompass the entire list of anti-trafficking offenses. Federal law now permits victims of human trafficking to bring a civil suit against both traffickers and anyone who financially benefited from his or her victimization and knew or should have known the acts were in violation of the law.

Clearly, the intent of the civil cause of action provisions of TVPA is to broadly compensate victims of interstate human trafficking. In this case, Mr. Leung, a thirty-five-year-old Concord, New Hampshire middle school teacher, repeatedly trafficked Plaintiff Fabiana McLeod, a 13-year-old female student from Concord, New Hampshire to The Fessenden School in Newton, Massachusetts, separated her from other children to work in his office, barricaded her in a secluded dormitory room, and repeatedly raped her. In addition, Mr. Leung transported Plaintiff Fabiana McLeod to the New York City area, separated her from the other children, made her perform duties in his hotel room, locked her into his hotel room, and raped her. If this

is not the type of behavior TVPA is meant to address, then no misconduct will ever satisfy the elements of TVPA and the statue will be meaningless.

## Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is *plausible* on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

## Chapter 77 and 18 U.S.C. § 1595

18 U.S.C. § 1595(a) states:

(a) An individual who is a victim of a violation of this chapter [18 USCS §§ 1581 et seq.] may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter [18 USCS §§ 1581 et seq.]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

"A violation of this chapter" means a violation of any one and/or combination of the eighteen (18) violations (in addition to § 1595, the civil remedy provision) in Chapter 77 as enumerated below:

§ 1581.      Peonage; obstructing enforcement
§ 1582.      Vessels for slave trade
§ 1583.      Enticement into slavery
§ 1584.      Sale into involuntary servitude
§ 1585.      Seizure, detention, transportation or sale of slaves

4

§ 1586.        Service on vessels in slave trade

§ 1587.        Possession of slaves aboard vessel

§ 1588.        Transportation of slaves from United States

§ 1589.        Forced labor

§ 1590.        Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor

§ 1591.        Sex trafficking of children or by force, fraud, or coercion

§ 1592.        Unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor

§ 1593.        Mandatory restitution

§ 1593A.       Benefitting financially from peonage, slavery, and trafficking in persons

§ 1594.        General provisions

§ 1595A.       Civil injunctions

§ 1596.        Additional jurisdiction in certain trafficking offenses

§ 1597.        Unlawful conduct with respect to immigration documents

§§ 1581, 1584, 1589, 1590, and 1591 are applicable to this action. [1]

## § 1581, Peonage; obstructing enforcement, states:

Whoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage, shall be fined under this title or imprisoned not more than 20 years, or both . . . if the violation includes . . . aggravated sexual abuse or the attempt to commit aggravated sexual abuse . . . the defendant shall be fined under this title or imprisoned for any term of years or life, or both..

"What is peonage? It may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness."

Clyatt v. United States, 197 U.S. 207, 215 (1905).

"The condition of peonage, therefore, to which it is forbidden to hold or return any person, by the express  words of the statute, means the situation or status in which a person is placed, including the physical and moral results of returning or holding such person to perform labor or service, by force either of law or custom, or by force of lawless acts of individuals unsupported by local law, 'in liquidation of any debt, *obligation, or otherwise*.' The phrase

---

[1] To the extent that the Court may not be satisfied that the Complaint plausibly suggests a violation of 18 U.S.C. §§ 1581, 1584, 1589, 1590, and/or 1591, Plaintiff Fabiana McLeod asks the Court for leave to file a First Amended Complaint.

'condition of peonage' means the actual status, physical and moral, with the inevitable incidents to which the employe, servant, or debtor was reduced under that system, when held to involuntary performance   or liquidation of his obligation -- the effect thereby produced upon the person, liberties, and rights of a man held in such a situation. ***'Otherwise,' in contradistinction to 'any debt or obligation,' cannot mean less than that the debt or obligation upon which the claim to compulsory service is based need not be real or of legal validity, but includes cases when the 'obligation,' performance of which is coerced by labor against the will of the servitor, is unfounded, concocted, or illegal***". <u>Peonage Cases</u>, 123 F. 671, 679-680 (M.D. Ala. 1903).

"[A] citizen held and worked by lawless methods against his will for the purpose of compelling him in this manner to discharge a real ***or alleged obligation*** is, in contemplation of law, held in a condition of peonage. ***The words 'a condition of peonage,' as used in this sense, should be broadly construed in favor of the liberty of the citizen.*** There can be no more salutary rule of statutory construction." <u>United States v. McClellan</u>, 127 F. 971, 975 (S.D. Ga. 1904) (emphasis not in original).

"While the force exerted may be less than actual violence or physical restraint, while it is sufficient if the jury believe that the laborers were so influenced by fear of the defendant that their wills were subdued, yet this fear, in order to make the offense of peonage, must have been exerted by the defendant, and by him willfully, knowingly, and corruptly. <u>United States</u> v. <u>Clement</u>, 171 F. 974, 977 (D.S.C. 1909).

"For purposes of 18 U.S.C. §§ 1581, 1583, and 1584, the use, or threatened use, of law or physical force is not an essential element of a charge of 'holding' in involuntary servitude. Other forms of coercion may also result in a violation of the involuntary servitude statutes. The allegations that the defendants engaged in specific improper or wrongful conduct with the intent to coerce the Indonesian servants into performing services for them involuntarily, and that the conduct had the intended effect, are sufficient to preclude dismissal." <u>United States</u> v. <u>Mussry</u>, 726 F.2d 1448, 1455-1456 (9th Cir. 1984).

6

"In determining the question of involuntariness, the court should consider whether the challenged conduct would have had the claimed effect upon a reasonable person of the same general background and experience. ***Thus, the particular individual's background is relevant in deciding whether he or she was coerced into laboring for the defendant***. Id., at 1453. (Emphasis not in original).

At all material times, Plaintiff Fabiana McLeod's "background" was that she was a young child and a student in a school where Mr. Leung taught. It is certainly reasonable to infer that Plaintiff Fabiana McLeod felt indebted to Mr. Leung based on his position of power or that she believed that she was indebted to Mr. Leung because of the gifts he showered upon her. (See Commonwealth's Statement of the Case[2] (Exhibit 1), stating "Throughout this time the defendant also gave [Fabiana McLeod] various gifts such as shoes, jewelry and a laptop."). In addition, Mr. Leung provided to Plaintiff Fabiana McLeod a substantial amount of cash so that she could buy her mother, Plaintiff Karina McLeod, expensive gifts.

Mr. Leung discussed The Fessenden School with Plaintiff Mark McLeod and represented that Plaintiff Fabiana McLeod would benefit from her involvement with The Fessenden School (See Complaint, ¶¶ 121). It is certainly reasonable to infer that Plaintiff Fabiana McLeod felt indebted to Mr. Leung for the opportunity to be involved with The Fessenden School.

Mr. Leung would often separate Plaintiff Fabiana McLeod from the other children and have her work with him in his office at The Fessenden School. (See Complaint, ¶¶ 127) and, if

---

[2] Ordinarily, a court ruling on a motion to dismiss may only consider whether the factual allegations within the four corners of the plaintiff's complaint state a plausible claim for relief. Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020). One exception, relevant here, occurs "when, as now, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998). In addition, a court may also consider "facts susceptible to judicial notice and concessions in [the] plaintiff's response to the motion to dismiss." Schatz v. Republican Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012). See also, James D. Julia, Inc. v. Dan Murphy Auctions, LLC, No. 1:21-cv-00025-JAW, 2021 U.S. Dist. LEXIS 115124, at *4 (D. Me. June 21, 2021).

she wanted to hang out with kids instead of Leung, "he would get extremely angry" at her. (See Perkins Report,[3] p. 66 (Exhibit 2).

Clearly, the Complaint states a claim that Mr. Leung violated § 1581 that is plausible on its face.

## § 1584, Sale into involuntary servitude, states:

(a) Whoever knowingly and willfully holds to involuntary servitude . . . any other person for any term . . . shall be fined under this title or imprisoned not more than 20 years, or both . . . if the violation includes . . . aggravated sexual abuse . . . the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

The same facts that support Plaintiff Fabiana McLeod's claim of a violation of § 1581 plausibly suggest a violation of § 1584.

## § 1589, Forced labor, states:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

> (2) by means of serious harm or threats of serious harm to that person or another person;

> (3) by means of the abuse or threatened abuse of law or legal process; or

> (4) **by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection** (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

---

[3] The Perkins Report is an investigative document prepared by Djuna Perkins, an attorney-consultant paid by the Concord, New Hampshire School District. The Perkins Report describes the happenings on the Fessenden School campus during the summer of 2016. A heavily redacted version of the 115-page Perkins Report has been made public.

(c) In this section:

> (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

> (2) The term **"serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.**

§ 1589 is a recent addition to Chapter 77 that makes slavery, peonage and holding to involuntary servitude criminal acts. § 1589 was adopted in 2000 as part of a broader set of provisions-the Victims of Trafficking and Violence Protection Act of 2000. § 1589 was intended expressly to counter United States v. Kozminski, 487 U.S. 931 (1988). See H.R. Conf. Rep. No. 106-939, at 100-01 (2000). In Kozminski, the Supreme Court had interpreted the pre-existing ban on "involuntary servitude" in § 1584 to prohibit only conduct involving the use or threatened use of physical or legal coercion. 487 U.S. at 949-52.

In glossing the new statute, the Conference Report said "serious harm" was intended to encompass not only physical violence, but also ***more subtle psychological methods of coercion***—"such as where traffickers threaten . . . dire consequences by means other than overt violence." H.R. Conf. Rep. No. 106-939, at 101. The Conference Report continued: "The term 'serious harm' as used in this Act refers to a broad array of harms, including both physical and nonphysical" Id. See also United States v. Bradley, 390 F.3d 145, 150 (1st Cir. 2004) (term "serious harm" found in language of 18 USCS § 1589, encompassed more than physical violence, including more subtle psychological methods of coercion).

The First Circuit also recognized "known objective conditions that make the victim especially vulnerable to pressure (such as ***youth*** or immigrant status) bear on whether the employee's labor was 'obtained' by forbidden means." Bradley, 390 F.3d at 153, citing H.R.

Conf. Rep. No. 106-939, at 101; <u>Kozminski</u>, 487 U.S. at 952; <u>United States v. Alzanki</u>, 54 F.3d 994, 1000-01 (1st Cir. 1995), cert. denied, 516 U.S. 1111 (1996).

In this case, Mr. Leung knowingly obtained the labor or services of Plaintiff Fabiana McLeod by (1) by means of force, threats of force, physical restraint, or threats of physical restraint (See Complaint, ¶¶ 137, 143, and 149); (2) by means of serious harm or threats of serious harm; (3) by means of the abuse or threatened abuse of law or legal process (See Commonwealth's Statement of the Case, Exhibit 1, "the defendant told her she could not say anything as she would ruin both of their lives."); and (4) by means of any scheme, plan, or pattern intended to cause Plaintiff Fabiana McLeod to believe that, if she did not perform such labor or services, she would suffer serious harm.

The Complaint clearly describes how Mr. Leung separated Plaintiff Fabiana McLeod from the other children during a field trip to New York and made her stuff envelopes while the other children enjoyed themselves. (See Complaint, ¶¶ 142-149).

**§ 1590, Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, states:**

(a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both . . . if the violation includes . . . aggravated sexual abuse . . .  the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

Mr. Leung knowingly recruited and transported Plaintiff Fabiana McLeod to The Fessenden School. (See Complaint, ¶¶ 120-123, 127, and 171 and Ex. 2, Perkins Report, p. 66.) Paragraph 171 of the Complaint specifically states:

> "According to prosecutors the girl, who was an unpaid staffer who assisted Leung at the Fessenden School, felt she had "no control" and was "degraded."

> "A lot of times he was aggressive toward her, not hitting her, but aggressively put himself upon her," . . . "She felt degraded by him and no choice in what was going on."

**§ 1591, Sex trafficking of children or by force, fraud, or coercion, states:**

(a) Whoever knowingly—

> (1) in . . . interstate . . . commerce. . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing. . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

(b) The punishment for an offense under subsection (a) is—

> (1) if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

> (2) if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

* * * * * * *

(e) In this section:

> (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

> (2) The term "coercion" means—

>> (A) threats of serious harm to or physical restraint against any person;

>> (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

>> (C) the abuse or threatened abuse of law or the legal process.

(3) **The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person**.

(4) The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

(5) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

(6) The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

Mr. Leung argues that Plaintiff Fabiana McLeod "does not and cannot allege a violation of Section 1591 ("Sex trafficking of children by force, fraud, or coercion") where the plaintiff would be required to show that the plaintiff was the subject of a "commercial sex act." Mr. Leung fails to acknowledge the definition of "commercial sex act" provided in 18 U.S.C. § 1591e(3): "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person."

The COMMONWEALTH'S STATEMENT-OF THE CASE, attached as Exhibit 1, states, "Throughout this time [Mr. Leung] also gave [Fabiana Mcleod] various gifts such as shoes, jewelry and a laptop." These are things "of value" that Mr. Leung, a "person" gave to Plaintiff Fabiana McLeod, a "person" for no other reason except that he was sexually abusing her. In addition, Mr. Leung provided to Plaintiff Fabiana McLeod a substantial amount of cash so that she could buy her mother, Plaintiff Karina McLeod, an expensive gift.

In addition, over the several years that Mr. Leung abused Plaintiff Fabiana McLeod, he constantly reminded her that if she reported his conduct, they would both suffer repercussions. It is reasonable to infer that Mr. Leung intended to cause Plaintiff Fabiana McLeod to believe that failure to perform an act would result in serious harm to or physical restraint against her. The serious harm was physical and nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel Plaintiff Fabiana McLeod to allow herself to be sexually assaulted.

**CROSSMOTION OF PLAINTIFF FABIANA MCLEOD
FOR LEAVE TO AMEND COMPLAINT TO ADD CAUSES OF ACTION LXVI and LXVII,
ACTIONS AGAINST DEFENDANTS PRIMO LEUNG AND THE FESSENDEN SCHOOL FOR
VIOLATION OF HER CIVIL RIGHTS, PURSUANT TO M.G.L. c. 12, § 11I,
(FALSE IMPRISONMENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

M.G.L. c. 12, § 11I states:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

The Massachusetts Supreme Judicial Court recently established that the Commonwealth's constitution contains a fundamental right of free movement. "We do, however, reach the following conclusion: the Massachusetts Declaration of Rights guarantees a fundamental right to move freely within the Commonwealth." Commonwealth v. Weston, 455 Mass. 24, 32-33 (2009).

M.G.L. c. 4, § 7 states, "In construing statutes the following words shall have the meanings herein given, unless a contrary intention clearly appears: . . . Twenty–third, "Person" or "whoever" shall include corporations, societies, associations and partnerships."

Plaintiff need not allege "state action" in order to state cause of action under M.G.L. c 12, § 11I. Bell v. Mazza, 394 Mass. 176 (1985).

Under Massachusetts civil rights law, derogation of secured rights must occur by threats, intimidation or coercion. Id. Plaintiff can establish claim under Massachusetts Civil Rights Act by proving (1) that her federal or state constitutional rights have been interfered with or attempted to be interfered with, and (2) that interference or attempted interference was by threat, intimidation or coercion. Appleton v. Hudson, 397 Mass. 812 (1986).

13

As Mr. Leung acknowledges in his MEMORANDUM OF LAW IN SUPPORT OF HIS RULE 12(B)(6) MOTION TO DISMISS COUNTS VII, VIII AND LXI FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED,:

- Mr. Leung would enter Ms. McLeod's room when she was alone and would "barricade the door with furniture, expose himself and sexually assault her." (Complaint, ¶ 137).

- Mr. Leung "continued assaults on [Ms. McLeod] in her dormitory and in the tunnels and stairwells of The Fessenden School." (Complaint, ¶ 151).

- During a game called "Manhunt," Mr. Leung "would hunt [Ms. McLeod] and sequester her in a secluded stairwell where he would forcibly kiss her, fondle her breasts under her shirt, undress her, and digitally and orally rape her." (Complaint, ¶ 160).

The Commonwealth's Statement of the Case" (Exhibit 1) states:

- "His demeanor during these assaults and often throughout the camp was aggressive and childish, especially when Jane would attempt to prevent him from getting what he wanted."

- "On at least two occasions, the defendant came into Jane's room and blocked the door using a nightstand."

The Perkins Report, page 66, (Exhibit 2) states:

- "However, if [Fabiana McLeod] wanted to hang out with kids instead of Leung, 'he would get extremely angry' at [Fabiana Mcleod]".

Clearly, Massachusetts law, Mr. Leungs's above acknowledgements, the Commonwealth's Statement of the Case, and the Perkins Report, plausibly suggest that Mr. Leung and The Fessenden School violated Plaintiff Fabiana McLeod's civil rights by threat, intimidation or coercion. Therefore, she asks this Court for leave to file an Amended Complaint to include Causes of Action against Defendants Primo Leung and The Fessenden School For Violation of Her Civil Rights, Pursuant To M.G.L. c. 12, § 11I, (False Imprisonment And Intentional Infliction Of Emotional Distress) and to include the Commonwealth's Statement of the Case and Page 66 of the Perkin's Report as Exhibits to the Amended Complaint.

## <u>CONCLUSIONS</u>

1.    Plaintiff Fabiana McLeod voluntarily dismisses Causes of Action VII and VIII against Mr. Leung and Causes of Action IV and V against The Fessenden School.

2.    Plaintiff Fabiana McLeod respectfully asks this Court for leave to file a First Amended Complaint to include Causes of Action against Defendants Primo Leung and The Fessenden School For Violation of Her Civil Rights, Pursuant To M.G.L. c. 12, § 11I, (False Imprisonment And Intentional Infliction Of Emotional Distress).

3.    Plaintiff Fabiana McLeod respectfully asks this Court to deny Mr. Leung's Motion that the Complaint Fails To State A Claim Under The Trafficking Victims Protection Act, 18 U.S.C. § 1595. In the alternative, Plaintiff Fabiana McLeod respectfully asks this Court to amend her Complaint to add additional facts, several of which have recently come to light, to her Complaint.

Respectfully submitted,
The Plaintiff,

Fabiana Hillary McLeod

By her attorneys,


*/s/ Domenic Paolini*
Domenic Paolini, Esq.
BBO # 643215
office: 617.951.0300
cell: 617.372.1514
email: dpaolini@paoliniandhaley.com

Richard M. Haley, Esq.
BBO # 553253
email: rhaley@paoliniandhaley.com

**PAOLINI & HALEY**
400 Tradecenter Drive
Suite 5900
Woburn, MA 01801


Dated: September 21, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing will be served via the ECF system on all counsel of record, and that counsel not receiving electronic notifications via the ECF system will be served via first class U.S. mail, postage prepaid.

/s/ Domenic Paolini

_____

Dated: September 21, 2021