

January 13, 2022

Robert Powers, Esq.  
Michael Mazurczak, Esq.  
Lauren C. Roche, Esq.  
Melick & Porter, LLP  
One Liberty Square  
Boston, Massachusetts 02109

Karen Pickett, Esq.  
Pickett Law Offices, P.C.  
125 High St. 26th Floor  
Boston, MA 02110

**VIA EMAIL**

RE:   Fabiana McLeod, et al  
       v.  
       Solomon J. Kumin, The Fessenden School, Primo "Howie" Leung, et al  
       United States District Court, District of Massachusetts Civil Action No.: 1:21-cv-10807

Dear Counsel:

Thank you for your email of January 12, 2022 (attached to this letter) regarding mediation. Please accept this letter as the Plaintiffs' response to the several points put forward by Attorney Mazurczak.

The Plaintiffs still believe that a February date for *final* mediation is possible. Regarding discovery, the Plaintiffs have already produced their documents and described their case in many letters and attached exhibits, as well as in their 93A demand package – including naming their experts and the expected testimony. We have also produced *confidential* treatment records and school records which we expected would not be disclosed to anybody. Therefore, mediation need not be delayed waiting for additional discovery from us.

As for The Fessenden School's discovery, the Plaintiffs have been told for almost two years that the documents already produced are all that exist – there are no more documents to produce. As for Mr. Leung's discovery, the Plaintiffs understand that his records and computers have been confiscated by law enforcement and he has no documents to produce. Therefore, mediation should not be delayed waiting for further disclosures from the Defendants.

Attorneys at Law

**Domenic Paolini**  
**Richard M. Haley**

400 Tradecenter, Suite 5900  
Woburn, MA 01801

t.    617 951 0300  
f.    617 622 5077  
e.    info@paoliniandhaley.com  
url.  www.paoliniandhaley.com

*A Professional Corporation*

Upon the agreement of all parties, Judge Saylor referred this case to mediation. If the Court wanted to proceed with the traditional automatic disclosure process and discovery, then I am sure the Court would have scheduled a Scheduling Conference and ordered a discovery plan. My interpretation of the referral to Magistrate Judge Kelley for mediation is that the Court wants the parties to sit down with the mediator and start the mediation process.

Unfortunately, about an hour ago I was informed that information concerning documents the Plaintiffs have prepared and/or shared during this litigation has been leaked to Mr. Leung's criminal defense attorney. The Plaintiffs do not want this mediation process to turn into the Primo Leung defense process. On February 11, 2021, the Plaintiffs shared certain privileged medical records after Attorney Mazurczak signed a Non-Disclosure Agreement. Now I find out that Mr. Leung's defense attorney is aware of the privileged medical records, their contents and who has possession of them.

A "JOINT MOTION TO CONTINUE", filed on December 30, 2021, in *Commonwealth v. Leung*, Middlesex Superior Court Docket No. 1981CR00246H, and attached to this letter, states,

> Perhaps most importantly, the defendant has now learned that counseling records of the complainant are in the possession of counsel for the complainant. The complainant, by virtue of the allegations made in her complaint and the nature of the damages she alleges has placed those records in issue in the civil case and, in the view of the defendant, which he believes to be supported by law, has waived any claim of privilege. The complainant's counsel has provided at least part of those records to counsel for Fessenden. Counsel for Fessenden has informed counsel representing the defendant in the civil matter, Karen Pickett, that the portion of the records provided specifically identify at least one counselor. The defendant anticipates being provided with copies of those records in coming weeks as part of the discovery process in the civil case. In the alternative, in the event they are not provided reasonably promptly, the defendant intends to pursue discovery via judicial subpoena. The defendant is optimistic however that such potentially time-consuming and complicated litigation will be unnecessary.

Counsel for Fessenden informing counsel representing Mr. Leung in the civil matter, Karen Pickett, about the confidential medical records is an obvious breach of the February 11, 2021 non-disclosure agreement. Although the non-disclosure agreement provides for legal remedies in the event of a breach, the effects on Fabiana McLeod, who as a child was repeatedly raped by Mr. Leung, are far more devasting. Already Fabiana is suffering additional emotional distress because an attorney representing a school for children is using her most personal records to provide a get-out-of-jail-free card to a pedophile teacher. Rest assured, this action will affect Fabiana's demand at mediation and, if mediation fails, the jury will surely take into account counsel's shenanigans when they assess punitive damages.

Therefore, the Plaintiffs' positions are now:

- The Plaintiffs will produce no further documents, no nothing, unless Magistrate Judge Kelley specifically requests production, and anything produced be clearly marked as protected by the federal mediation privilege.[1]

- The Plaintiffs refuse to have Mr. Leung and/or his attorney participate in this mediation process. It is my understanding that Mr. Leung has no insurance coverage, and, on July 1, 2019, he filed an Affidavit of Indigency in Commonwealth v. Leung, Middlesex Superior Court Docket No. 1981CR00246H. Mr. Leung admittedly has nothing to contribute to a mediated settlement, so his presence and his attorney's presence is not necessary to mediate this matter.

Regarding Mr. Mazurczak's statement in his email of January 2, 2022,

> Fessenden's insurer will want an opportunity to review the production in advance of the mediation in order to establish reserves. In significant cases, insurers generally like to have 2-4 weeks to consider materials and conduct roundtables before a mediation occurs.

Am I to believe that Fessenden's insurer, who 1) is a Defendant in this action; 2) has more liability from the Plaintiffs' 93A/176D claims than any other Defendant; and 3) has immediate and unfettered access to every Fessenden Defendant and every potential Fessenden witness, still needs 2-4 weeks "to consider materials and conduct roundtables"? Fessenden's insurer has known about this matter since early 2019 when Mr. Leung was arrested for raping Fabiana in Fessenden's Sanderson dormitories. Am I to believe that Fessenden's insurer did not investigate Fessenden's liability and potential exposure at that time? The Plaintiffs filed their exhaustive Complaint on May 17, 2021 seeking $100 million in damages. Am I to believe that Fessenden's insurer did not investigate Fessenden's liability and potential exposure at that time? Again, the particulars of the Plaintiffs' case and the Fessenden insurer's obligations under Chapter 176D have all been laid out in our 93A demand letter. Waiting for the insurer is not a reason to delay this mediation.

Call me a conspiracy theorist, but it seems that the Fessenden attorneys and Attorney Pickett are simply more interested in acquiring documents and information to pass along to Mr. Leung's criminal defense attorney than in a good faith mediation of this matter.

---

[1] This case arises out of a federal question and therefore federal common law controls the existence and application of any evidentiary privilege. Fed. R. Evid. 501; In re Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc., 400 F. Supp. 2d 386, 391 (D. Mass. 2005). The Massachusetts District Court, and several district courts elsewhere have recognized the federal mediation privilege, consistent with the holding of the Supreme Court in Jaffee v. Redmond, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996). See ACQIS, LLC v. EMC Corp., 2017 U.S. Dist. LEXIS 100856, at *3 (concluding that there was "no reason to depart from the conclusions of [other] district courts that a federal mediation privilege exists"). See Spruce Envtl. Techs., Inc. v. Festa Radon Techs. Co., 370 F. Supp. 3d 275, 278-279 (D. Mass. 2019).

Page 4
January 13, 2022

My obligations are to my clients. My clients hired me to get this matter in front of a mediator or in front of a judge and jury. Right now, I am obligated to respond to the emails of January 10 and 12, 2022, from Leonardo T. Vieira, Courtroom Deputy to the Honorable M. Page Kelley. ***My response to Mr. Vieira is that the Plaintiffs want to meet with Magistrate Judge Kelley as soon as possible to set the parameters for this mediation.***

Even though liability is reasonably clear, the Defendants have not made an offer to settle this matter, a clear violation of M.G.L. ch. 93A and ch. 176D. The Plaintiffs suggest that at this initial meeting with Magistrate Judge Kelley, the parties put their opening demand and offer on the table and that Magistrate Judge Kelley explain her preferred process for mediation. The Plaintiffs also suggest that the parties, with Magistrate Judge Kelley's oversight, begin to work out the details of a confidentiality agreement and the final settlement agreement.

The Plaintiffs still believe that the end of February is a viable option for the final phase of this mediation, and the parties should be discussing dates for this event with Mr. Viera.

Thank you for your kind attention.

                Very truly yours,

                *Domenic Paolini*

                Domenic Paolini, M.D., M.B.A., J.D.

DP/hc

cc:        Leonardo Vieira (Leonardo_Vieira@mad.uscourts.gov)

enclosures:    email of January 12, 2022 from Attorney Mazurczak
                   Joint Motion for Continuance
                   Non-disclosure Agreement of February 11, 2021

# Domenic Paolini

| | |
|---|---|
| **From:** | Michael Mazurczak <mmazurczak@melicklaw.com> |
| **Sent:** | Wednesday, January 12, 2022 11:18 AM |
| **To:** | Domenic Paolini; kpickettlaw_gmail.com; Michael Mazurczak; Robert Powers; Lauren C. Roche |
| **Cc:** | Rich Haley |
| **Subject:** | RE: 1:21-cv-10807-FDS McLeod et al v. Kumin et al mediation |

Domenic:

In response to the Court's two inquiries, we agree that joint response would be best. A February date is a possibility if we have agreement on the automatic disclosures.

We previously discussed production in advance of the anticipated Scheduling Conference. It appears that the Court will defer scheduling the conference until the mediation takes place. Fessenden's insurer will want an opportunity to review the production in advance of the mediation in order to establish reserves. In significant cases, insurers generally like to have 2-4 weeks to consider materials and conduct roundtables before a mediation occurs.

We are in a position to work with you on a date for our initial disclosures. If you could advise when your production can be made, we will reach out to the insurer to ascertain how long after that it will need for internal considerations. If disclosures can be made soon, and the Court has an open date, perhaps February can work. Karen Pickett advises she is on vacation starting February 24th for a week. We have no scheduling issues in February.

Fessenden would like mediation at the earliest opportunity, but recognizes that everyone should have adequate time to prepare in order to maximize chances for success. It might be better therefore to suggest dates in March so that we can exchange the discovery in advance.

What are your thoughts?


Maz
Michael J. Mazurczak
**Melick & Porter, LLP**
One Liberty Square
Boston, MA 02109
Direct Dial 617-502-9640
Cell 617-966-0544
maz@melicklaw.com
MA | CT | RI | NH | ME | VT
*"It's not whether you get knocked down, it's whether you get up." – Vince Lombardi*

---

**From:** Domenic Paolini <dpaolini@paoliniandhaley.com>
**Sent:** Tuesday, January 11, 2022 7:58 PM
**To:** kpickettlaw_gmail.com <kpickettlaw@gmail.com>; Lauren C. Roche <lroche@melicklaw.com>; Michael Mazurczak <mmazurczak@melicklaw.com>; Robert Powers <rpowers@melicklaw.com>
**Cc:** Rich Haley <rhaley@paoliniandhaley.com>
**Subject:** 1:21-cv-10807-FDS McLeod et al v. Kumin et al mediation

Counsel,

In response to Mr. Leonardo Vieira's inquiry of January 10, 2022 as to " What month would you like to mediate? ", the Plaintiffs suggest February 7 through 25, 2022.

Although Mr. Vieira does not state his preference as to whether he would like an individual response from each party or a unified response from all parties, perhaps an agreed to time frame would be more expeditious?

I look forward to your responses.

Leonardo T. Vieira

Domenic Paolini M.D., M.B.A., J.D.
PAOLINI & HALEY
400 Tradecenter Drive Suite 5900
Woburn, MA 01801

Office:            617.951.0300
Fax:               617.622.5077
Direct phone:   617.372.1514
Email:             dpaolini@paoliniandhaley.com
Web:              www.paoliniandhaley.com



OUTSIDE EMAIL


COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                                                                         SUPERIOR COURT
                                                                                                       1981CR00246

COMMONWEALTH

V.

PRIMO LEUNG

JOINT MOTION TO CONTINUE

Now come the parties and jointly request that this Court reschedule the final pretrial conference and jury selection scheduled for January 14 and 25, 2022, respectively. Such relief is necessary to afford the defendant his right to due process under the Fourteenth Amendment to the United States Constitution and Article XII of the Massachusetts Declaration of Rights.

This matter concerns alleged sexual assaults of a minor student by the defendant, a teacher. The complainant first reported the allegations to law enforcement in Concord, New Hampshire. The Concord Police Department investigated the matter and determined that the incidents alleged occurred in Newton, whereupon they referred the matter to the Newton Police Department. The Newton Police furthered the investigation, ultimately resulting in the instant indictments.

In recent months and weeks, the parties have received significant new information material to the case. In May, 2021, the complainant filed a lawsuit in federal district court against the defendant, the Fessenden School (where the defendant had been employed), and numerous other individuals, concerning much of the same subject matter as the criminal prosecution. A summons was served on the defendant in connection with that matter in August, 2021. Thereafter, the defendant learned that the complainant had reached a financial settlement of related claims with the Concord, New Hampshire School District (who had also formerly employed the defendant).

In July, 2021, the complainant's attorney notified the Commonwealth that the complainant had additional information. In August, 2021 she was interviewed and informed the Commonwealth that while working as a student-counselor at a summer program run by the defendant, she had attended parties at which alcohol and marijuana-infused brownies (allegedly provided by the defendant) were served. She stated that numerous people were present at the parties, that she consumed both alcohol and marijuana, and that she was assaulted after doing so. This information was provided to the defendant by the Commonwealth in November, 2021.

In her complaint, the complainant also made new allegations concerning assaults by the defendant occurring on a trip to New York City. The complainant had previously been questioned by law enforcement in New Hampshire concerning trips taken with the defendant and other students, and denied that any inappropriate contact had occurred. On or about December 6, 2021, the Commonwealth informed the defendant that the complainant had been interviewed by law enforcement in New York, who referred the matter to officials in New Jersey. Neither the Commonwealth nor the defendant have received any reports or other additional information concerning these new statements to law enforcement. The Commonwealth is seeking to obtain this material. In the view of the defendant, when

#40

analyzed in the context of her prior statements to law enforcement in New Hampshire, reports concerning these new inconsistent statements constitute exculpatory information. The parties require additional time to obtain the relevant reports, to investigate these allegations and, if necessary, to secure at trial the attendance of witnesses from outside the Commonwealth.

Perhaps most importantly, the defendant has now learned that counseling records of the complainant are in the possession of counsel for the complainant. The complainant, by virtue of the allegations made in her complainant and the nature of the damages she alleges has placed those records in issue in the civil case and, in the view of the defendant, which he believes to be supported by law, has waived any claim of privilege. The complainant's counsel has provided at least part of those records to counsel for Fessenden. Counsel for Fessenden has informed counsel representing the defendant in the civil matter, Karen Pickett, that the portion of the records provided specifically identify at least one counselor. The defendant anticipates being provided with copies of those records in coming weeks as part of the discovery process in the civil case. In the alternative, in the event they are not provided reasonably promptly, the defendant intends to pursue discovery via judicial subpoena. The defendant is optimistic however that such potentially time-consuming and complicated litigation will be unnecessary.

In the view of the defendant, these records are likely to be particularly relevant, and are in all probability exculpatory in this case. According to police reports, the complainant and her parents were questioned regarding the complainant's attendance in counseling, and whether she had disclosed abuse. They reported that the complainant mentioned the defendant in counseling sessions, but that no allegation of any inappropriate physical contact was ever made. It is noteworthy in this regard that any counselor would have been mandated to report sexual abuse, but that no such report appears ever to have been made. The defendant has been attempting to identify the counselor in order to pursue discovery of the records, but has been unable to do so (in fact, that specific issue was the subject of prior litigation in this case). As a consequence of the prior unavailability of that information, he has been unable to further pursue discovery.

The defendant is deeply concerned by the prospect of this case proceeding to trial without the defendant having an opportunity to obtain records that appear likely to contain exculpatory information. It should be noted in this regard that the records are almost certain to be provided to the defendant at some point during the civil proceeding. It would seem to the defendant to be a terribly unfair outcome for a criminal trial to occur without the defendant having access to what could very well turn out to be the most critical evidence in the case. It also makes it extraordinarily difficult to move forward with attempts to resolve the case, as there is now substantial additional uncertainty regarding critical facts that bear on the likelihood of conviction or acquittal at trial. Under such circumstances, the probability of a wrongful conviction and the need for further litigation, appeal, and/or a new trial is unreasonably high.

Finally, defense counsel has significant growing concerns about the trajectory of the pandemic and its potential implications for participants in the trial. The trial in this matter is scheduled for a time period forecast by nearly all experts to be one of widespread infection and rampant transmission. Our Commonwealth has already been setting records for new cases, while the peak is not forecast to occur for several weeks – at approximately the same time that this matter is set for trial. Trial of this matter could take as long as a week. Many prospective jurors will likely be reluctant to serve. Multiple witnesses will be required to travel from out of state and will both be placed at risk and will place others at risk as a result. Defense counsel believes that under the circumstances, a lengthy trial at that

particular time will present an unreasonable risk to his own health and safety, as well as that of his family and others with whom he is regularly in contact.[1]

In light of the foregoing, the parties request that this Court continue the pretrial conference to June 10, 2022 and the jury selection and trial to June 21, 2022. The defendant is not incarcerated. He is aware of and assents to the proposed new dates. The defendant has been advised by his counsel of his right to a speedy trial and the requirements of Mass. R. Crim. P. 36. The defendant waives his right to a speedy trial and the time limits provided by the rule for purposes of the continuance requested herein. The defendant waives his right to be present for a hearing concerning this Motion.

Wherefore the parties request that this Court:

I. Continue the final pretrial conference and jury selection;

II. Reschedule the final pretrial conference to June 10, 2022;

III. Reschedule jury selection to June 21, 2022; and

IV. Grant such further relief as the Court deems equitable.

Respectfully submitted,

For the Commonwealth,

/s/ Allison Brown
Allison Brown, Asst. Dist. Atty.
BBO No. 678696
Middlesex District Attorney
15 Commonwealth Ave.
Woburn MA 01801
781-897-8400

Dated: December 30, 2021

For the defendant, Primo Leung,

/s/ Ghazi D. Al-Marayati
Ghazi D. Al-Marayati
BBO No. 645209
Bookman & Al-Marayati, Attorneys
640 Main Street
Malden MA 02148
781-712-0007

Dated: December 30, 2021

---

[1] Counsel's concerns are not based solely on his own research and opinions, but also on those of his spouse, who holds a Ph.D. in immunology and has significant expertise, far beyond the ken of the ordinary lay person, on matters related to the course of and risk presented by the ongoing pandemic. In particular, she considers media reports concerning the relative "mildness" of the omicron variant, particularly in light of its substantially enhanced transmissibility, declining vaccine-based immunity, and additional stresses on on the healthcare system, to be unduly optimistic.

## NON-DISCLOSURE AGREEMENT

THIS AGREEMENT (the "**Agreement**") is entered into on this 11th day of February 2021 by and between Fabiana McLeod, represented by Domenic Paolini, Esq., PAOLINI & HALEY, located at 400 Tradecenter, Suite 5900, Woburn MA 01801 (the "**Disclosing Party**"), and MELICK & PORTER, located at One Liberty Square, Boston, MA 02109 (the "**Receiving Party**").

The Receiving Party hereto desires to participate in discussions regarding a dispute between Fabiana McLeod and the Fessenden School (the "**Dispute**"). During these discussions, Disclosing Party may share certain medical and/or psychiatric information with the Receiving Party. Therefore, in consideration of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Definition of Confidential Information**.

    (a)     For purposes of this Agreement, "**Confidential Information**" means any medical and/or psychiatric records or other information, produced by licensed healthcare providers, concerning Fabiana McCleod and not generally known or available to the public, whether in tangible or intangible form, in whatever medium provided, whether unmodified or modified by Receiving Party or its Representatives (as defined herein), whenever and however disclosed.

    (b)     Notwithstanding anything in the foregoing to the contrary, Confidential Information shall not include information which is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 4 hereof shall apply prior to any disclosure being made.

2. **Disclosure of Confidential Information**.

    From time to time, the Disclosing Party may disclose Confidential Information to the Receiving Party. The Receiving Party will: (a) limit disclosure of any Confidential Information to its directors, officers, employees, agents or representatives (collectively "**Representatives**") who have a need to know such Confidential Information in connection with the current or contemplated dispute between the parties to which this Agreement relates, and only for that purpose; (b) advise its Representatives of the proprietary nature of the Confidential Information and of the obligations set forth in this Agreement, require such Representatives to be bound by written confidentiality restrictions no less stringent than those contained herein, and assume full liability for acts or omissions by its Representatives that are inconsistent with its obligations under this Agreement; (c) keep all Confidential Information strictly confidential by using a reasonable degree of care, but not less than the degree of care used by it in safeguarding its own confidential information; and (d) not disclose any Confidential Information received by it to any third parties (except as otherwise provided for herein).

3. **Use of Confidential Information**.

The Receiving Party agrees to use the Confidential Information solely in connection with the current or contemplated dispute between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of the Disclosing Party. No other right or license, whether expressed or implied, in the Confidential Information is granted to the Receiving Party hereunder. Title to the Confidential Information will remain solely in the Disclosing Party.

4. **Compelled Disclosure of Confidential Information**.

Notwithstanding anything in the foregoing to the contrary, the Receiving Party may disclose Confidential Information pursuant to any governmental, judicial, or administrative order, subpoena, discovery request, regulatory request or similar method, provided that the Receiving Party promptly notifies, to the extent practicable, the Disclosing Party in writing of such demand for disclosure so that the Disclosing Party, at its sole expense, may seek to make such disclosure subject to a protective order or other appropriate remedy to preserve the confidentiality of the Confidential Information; provided that the Receiving Party will disclose only that portion of the requested Confidential Information that, in the written opinion of its legal counsel, it is required to disclose.  The Receiving Party agrees that it shall not oppose and shall cooperate with efforts by, to the extent practicable, the Disclosing Party with respect to any such request for a protective order or other relief.  Notwithstanding the foregoing, if the Disclosing Party is unable to obtain or does not seek a protective order and the Receiving Party is legally requested or required to disclose such Confidential Information, disclosure of such Confidential Information may be made without liability.

5. **Term**.

This Agreement shall remain in effect for a two-year term (subject to a one year extension if the parties are still discussing and considering the dispute at the end of the second year).  Notwithstanding the foregoing, the Receiving Party's duty to hold in confidence Confidential Information that was disclosed during term shall remain in effect indefinitely.

6. **Remedies**.

Both parties acknowledge that the Confidential Information to be disclosed hereunder is personal medical or psychiatric information, the unauthorized disclosure of which may cause emotional distress, embarrassment physical illness and/or anxiety to Fabiana McCleod. The damages to Disclosing Party that would result from the unauthorized dissemination of the Confidential Information would be impossible to calculate.  Therefore, both parties hereby agree that the Disclosing Party shall be entitled to injunctive relief  preventing the dissemination of any Confidential Information in violation of the terms hereof.  Such injunctive relief shall be in addition to any other remedies available hereunder, whether at law or in equity.  Disclosing Party shall be entitled to recover its costs and fees, including reasonable attorneys' fees, incurred in obtaining any such relief.  Further, in the event of litigation relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and expenses.

7. **Return of Confidential Information**.

Receiving Party shall immediately return and redeliver to Disclosing Party all tangible material embodying any Confidential Information provided hereunder and all notes, summaries, memoranda, drawings, manuals, records, excerpts or derivative information deriving therefrom, and all other documents or materials ("Notes") (and all copies of any of the foregoing, including "copies" that have been converted to computerized media in the form of image, data, word processing, or other types of files either manually or by image capture) based on or including any Confidential Information, in whatever form of storage or retrieval, upon the earlier of (i) the completion or termination of the dispute between the parties contemplated hereunder; (ii) the termination of this Agreement; or (iii) at such time as the Disclosing Party may so request; provided however that the Receiving Party may retain such of its documents as is necessary to enable it to comply with its reasonable document retention policies.  Alternatively, the Receiving Party, with the written consent of the Disclosing Party may (or in the case of Notes, at the Receiving Party's option) immediately destroy any of the foregoing embodying Confidential Information (or the reasonably nonrecoverable data erasure of computerized data) and, upon request, certify in writing such destruction by an authorized officer of the Receiving Party supervising the destruction).

8.   **Notice of Breach**.

Receiving Party shall notify the Disclosing Party immediately upon discovery of, or suspicion of, (1) any unauthorized use or disclosure of Confidential Information  by Receiving Party or its Representatives; or (2) any actions by Receiving Party or its Representatives inconsistent with their respective obligations under this Agreement, Receiving Party shall cooperate with any and all efforts of the Disclosing Party to help the Disclosing Party regain possession of Confidential Information and prevent its further unauthorized use.

9.   **No Binding Agreement for Transaction**.

The parties agree that neither party will be under any legal obligation of any kind whatsoever with respect to the dispute by virtue of this Agreement, except for the matters specifically agreed to herein.  The parties further acknowledge and agree that they each reserve the right, in their sole and absolute discretion, to reject any and all proposals and to terminate discussions and negotiations with respect to the dispute at any time.  This Agreement does not create a joint venture or partnership between the parties.  If a settlement occurs, the non-disclosure provisions of any applicable settlement documents entered into between the parties (or their respective affiliates) for the dispute shall supersede this Agreement. In the event such provision is not provided for in said transaction documents, this Agreement shall control.

10. **Warranty**.

**NO WARRANTIES ARE MADE BY EITHER PARTY UNDER THIS AGREEMENT WHATSOEVER**.  The parties acknowledge that although they shall each endeavor to include in the Confidential Information all information that they each believe relevant for the purpose of this dispute, the parties understand that no representation or warranty as to the accuracy or completeness of the Confidential Information is being made by the Disclosing Party.  Further, neither party is under any obligation under this Agreement to disclose any Confidential Information it chooses not to disclose.  The Disclosing Party shall have no liability to the Receiving Party (or any other person or entity) resulting from the use of the Disclosing Party's Confidential Information or any reliance on the accuracy or completeness thereof.

11. **Miscellaneous**.

(a)   This Agreement constitutes the entire understanding between the parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between the parties, with respect to the subject matter hereof.  This Agreement can only be modified by a written amendment signed by the party against whom enforcement of such modification is sought.

(b)   The validity, construction and performance of this Agreement shall be governed and construed in accordance with the laws of Massachusetts applicable to contracts made and to be wholly performed within such state, without giving effect to any conflict of laws provisions thereof.  The Federal and state courts located in Massachusetts shall have sole and exclusive jurisdiction over any disputes arising under, or in any way connected with or related to, the terms of this Agreement and Receiving Party: (i) consents to personal jurisdiction therein; and (ii) waives the right to raise *forum non conveniens* or any similar objection.

(c)   Any failure by either party to enforce the other party's strict performance of any provision of this Agreement will not constitute a waiver of its right to subsequently enforce such provision or any other provision of this Agreement.

(d)   Although the restrictions contained in this Agreement are considered by the parties to be reasonable for the purpose of protecting the Confidential Information, if any such restriction is found by a court of competent jurisdiction to be unenforceable, such provision will be modified, rewritten or interpreted to include as much of its nature and scope as will render it enforceable.  If it cannot be so modified, rewritten or interpreted to be enforceable in any respect, it will not be given effect, and the remainder of the Agreement will be enforced as if such provision was not included.

(e) Any notices or communications required or permitted to be given hereunder may be delivered by hand, deposited with a nationally recognized overnight carrier, electronic-mail, or mailed by certified mail, return receipt requested, postage prepaid, in each case, to the address of the other party first indicated above (or such other addressee as may be furnished by a party in accordance with this paragraph). All such notices or communications shall be deemed to have been given and received (a) in the case of personal delivery or electronic-mail, on the date of such delivery, (b) in the case of delivery by a nationally recognized overnight carrier, on the third business day following dispatch and (c) in the case of mailing, on the seventh business day following such mailing.

(f) This Agreement is personal in nature, and neither party may directly or indirectly assign or transfer it by operation of law or otherwise without the prior written consent of the other party, which consent will not be unreasonably withheld. All obligations contained in this Agreement shall extend to and be binding upon the parties to this Agreement and their respective successors, assigns and designees.

(g) Paragraph headings used in this Agreement are for reference only and shall not be used or relied upon in the interpretation of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

| Disclosing Party | Receiving Party |
|---|---|
| By | By |
| Domenic Paolini as attorney for Fabiana McLeod | |
| Date | Date |