

January 18, 2022

Robert Powers, Esq.  
Michael Mazurczak, Esq.  
Lauren C. Roche, Esq.  
Melick & Porter, LLP  
One Liberty Square  
Boston, Massachusetts 02109

Karen Pickett, Esq.  
Pickett Law Offices, P.C.  
125 High St. 26th Floor  
Boston, MA 02110

**VIA EMAIL**

RE:  Fabiana McLeod, et al
 v.
 Solomon J. Kumin, The Fessenden School, Primo "Howie" Leung, et al
 United States District Court, District of Massachusetts Civil Action No.: 1:21-cv-10807

Dear Counsel:

I am writing to further address the breach of the **NON-DISCLOSURE AGREEMENT** dated February 11, 2021 between Attorney Domenic Paolini, as attorney for Fabiana McLeod, and Attorney Mazurczak. For your convenience, I have attached a copy of the signed **NON-DISCLOSURE AGREEMENT.** On February 11, 2021 there was a meeting of the minds and agreement on the material terms of the **NON-DISCLOSURE AGREEMENT**, a present intention to be bound by that agreement, and an unambiguous manifestation of assent. The whole purpose of the **NON-DISCLOSURE AGREEMENT** was to keep Fabiana McLeod's confidential medical records out of Primo "Howie" Leung's hands, especially since his criminal defense counsel had already made one attempt to obtain those records through judicial action.

As stated in my letter of January 13, 2022, the breach of the **NON-DISCLOSURE AGREEMENT** was discovered when Primo "Howie" Leung's criminal defense counsel filed, on December 30, 2012, a "JOINT MOTION TO CONTINUE" in Commonwealth v. Leung, Middlesex Superior Court Docket No. 1981CR00246H. I have already shared the full text of the "JOINT MOTION TO CONTINUE".

Attorneys at Law  
**Domenic Paolini**  
**Richard M. Haley**

400 Tradecenter, Suite 5900  
Woburn, MA 01801

t.   617 951 0300  
f.   617 622 5077  
e.   info@paoliniandhaley.com  
url. www.paoliniandhaley.com

*A Professional Corporation*

The most troubling part of the "JOINT MOTION TO CONTINUE" is the following paragraph:

> Perhaps most importantly, the defendant has now learned that counseling records of the complainant are in the possession of counsel for the complainant. The complainant, by virtue of the allegations made in her complainant [sic] and the nature of the damages she alleges has placed those records in issue in the civil case and, in the view of the defendant, which he believes to be supported by law, has waived any claim of privilege. The complainant's counsel has provided at least part of those records to counsel for Fessenden. Counsel for Fessenden has informed counsel representing the defendant in the civil matter, Karen Pickett, that the portion of the records provided specifically identify at least one counselor. The defendant anticipates being provided with copies of those records in coming weeks as part of the discovery process in the civil case. In the alternative, in the event they are not provided reasonably promptly, the defendant intends to pursue discovery via judicial subpoena. The defendant is optimistic however that such potentially time-consuming and complicated litigation will be unnecessary.

Perhaps you can explain to me how Fabiana McLeod "has placed those records in issue in the civil case"? The records were produced to Attorney Mazurczak *before* the civil case was filed because Attorney Mazurczak represented that his clients wanted to proceed immediately to mediation *before* a civil case was filed. As such, the confidential medical records would be protected by various state and federal statutes ensuring the confidentiality of the mediation process and associated documents. Just to be sure that the medical records remained confidential, Attorney Paolini asked Attorney Mazurczak to sign the **NON-DISCLOSURE AGREEMENT**.

Perhaps you can explain to me exactly from whom "[t]he defendant anticipates being provided with copies of those records in coming weeks as part of the discovery process in the civil case"? Surely criminal defense counsel does not anticipate that Fabiana McLeod's civil counsel will simply hand over confidential medical records just because criminal defense counsel "anticipates" such obsequiousness? Believe you me, the only thing that Primo "Howie" Leung's civil and criminal defense counsel can "anticipate[]" is that obtaining Fabiana McLeod's confidential medical records will be involve "time-consuming and complicated litigation".

Perhaps you can identify the "[c]ounsel for Fessenden" who informed Attorney Pickett concerning the existence and contents of the confidential medical records? Was it Attorney Mazurczak? Attorney Powers? Attorney Roche?

It is perfectly clear that counsel for The Fessenden School want to do everything possible to help Primo "Howie" Leung's criminal defense. It appears that their strategy is that anything that helps Primo "Howie" Leung hurts Fabiana McLeod and helps The Fessenden School – very twisted strategy for a school for children and its attorneys. The mantra seems to be "Let's set Howie free so he can rape more children and at the same time save The Fessenden School some money." Otherwise, there would be no reason whatsoever to tell Primo "Howie" Leung's criminal defense counsel about the existence and contents of Fabiana McLeod's confidential medical records.

First, I want assurance that there will be NO FURTHER BREACH in the confidentiality of Fabiana McLeod's confidential medical records. This includes disseminating electronic and/or paper copies of the actual records and/or disseminating written, oral, and/or electronical descriptions of the existence and contents of the records.

Second, I want to know HOW FAR THE BREACH has already gone:

1. Has Attorney Mazurczak or any other investigator(s), employee(s), partner(s), associate(s), director(s), officer(s), agent(s) and/or representative(s) of Melick & Porter, LLP disseminated actual paper and/or electronic copies of Fabiana McLeod's confidential medical records to:

    a. Primo "Howie" Leung's criminal defense attorney(s) and/or his(their) law firm, and/or his(their) investigator(s), employee(s), partner(s), associate(s), director(s), officer(s), agent(s) and/or representative(s)? If so, to whom, exactly what, and how was the confidential information disclosed?

    b. Attorney Pickett and/or her law firm, and/or her investigator(s), employee(s), partner(s), associate(s), director(s), officer(s), agent(s) and/or representative(s)? If so, to whom, exactly what, and how was the confidential information disclosed?

    c. Any other person(s), law firm(s), and/or investigator(s)? If so, to whom, exactly what, and how was the confidential information disclosed?

2. Has Attorney Mazurczak or any other investigator(s), employee(s), partner(s), associate(s), director(s), officer(s), agent(s) and/or representative(s) of Melick & Porter, LLP disseminated descriptions, summaries, notes, excerpts and/or other narratives via letter and/or email to any person(s) and/or law firm(s) and/or entity(ies)? If so, to whom, exactly what, and how was the confidential information disclosed?

Third, I am demanding that the original documents provided to Attorney Mazurczak on February 11, 2021, and any paper copies, be IMMEDIATELY returned to me.

Fourth, I am demanding that all electronic copies of Fabiana McLeod's confidential medical records be permanently deleted, and the disk storage space (HDD or SDD) previously occupied by these files be overwritten (nonrecoverable data erasure of computerized data). This includes Fabiana McLeod's confidential medical records contained in system-backup media, such as for example email backup tapes, and caches.

Fifth, I am demanding that any and all tangible material embodying any confidential medical information provided pursuant to the **NON-DISCLOSURE AGREEMENT** dated February 11, 2021 and all notes, summaries, memoranda, drawings, manuals, records, excerpts or other

information deriving therefrom, and all other documents or materials (and all copies of any of the foregoing, including "copies" that have been converted to computerized media in the form of image, data, word processing, or other types of files either manually or by image capture) based on or including any confidential medical information, in whatever form of storage or retrieval IMMEDIATELY be returned to Attorney Paolini.

Sixth, if Attorney Mazurczak or any other investigator(s), employee(s), partner(s), associate(s), director(s), officer(s), agent(s) and/or representative(s) of Melick & Porter, LLP are served with a subpoena and/or other request for the confidential medical records of Fabiana McLeod, I am demanding that Attorney Paolini and Paolini & Haley, P.C. be notified by email (dpaolini@paoliniandhaley.com) and certified mail the same day the subpoena and/or other request is received whether or not the person(s) or entity served with the subpoena has electronic or paper documents responsive to the subpoena and/or other request.

Lastly, this breach of the NON-DISCLOSURE AGREEMENT has caused, and will continue to cause, severe emotional distress, embarrassment physical illness and/or anxiety to Fabiana McLeod. If Attorney Mazurczak and/or Melick & Porter, LLP does not satisfactorily respond to this letter by January 20, 2021, Attorney Paolini and Fabiana McLeod will IMMEDIATELY seek injunctive and legal relief from the appropriate court.

Thank you for your kind attention.

Very truly yours,

Domenic Paolini, M.D., M.B.A., J.D.

DP/hc

attachment

## NON-DISCLOSURE AGREEMENT

THIS AGREEMENT (the "**Agreement**") is entered into on this 11th day of February 2021 by and between Fabiana McLeod, represented by Domenic Paolini, Esq., PAOLINI & HALEY, located at 400 Tradecenter, Suite 5900, Woburn MA 01801 (the "**Disclosing Party**"), and MELICK & PORTER, located at One Liberty Square, Boston, MA 02109 (the "**Receiving Party**").

The Receiving Party hereto desires to participate in discussions regarding a dispute between Fabiana McLeod and the Fessenden School (the "**Dispute**"). During these discussions, Disclosing Party may share certain medical and/or psychiatric information with the Receiving Party. Therefore, in consideration of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Definition of Confidential Information**.

    (a)    For purposes of this Agreement, "**Confidential Information**" means any medical and/or psychiatric records or other information, produced by licensed healthcare providers, concerning Fabiana McCleod and not generally known or available to the public, whether in tangible or intangible form, in whatever medium provided, whether unmodified or modified by Receiving Party or its Representatives (as defined herein), whenever and however disclosed.

    (b)    Notwithstanding anything in the foregoing to the contrary, Confidential Information shall not include information which is required to be disclosed in a judicial or administrative proceeding, or is otherwise requested or required to be disclosed by law or regulation, although the requirements of paragraph 4 hereof shall apply prior to any disclosure being made.

2. **Disclosure of Confidential Information**.

    From time to time, the Disclosing Party may disclose Confidential Information to the Receiving Party. The Receiving Party will: (a) limit disclosure of any Confidential Information to its directors, officers, employees, agents or representatives (collectively "**Representatives**") who have a need to know such Confidential Information in connection with the current or contemplated dispute between the parties to which this Agreement relates, and only for that purpose; (b) advise its Representatives of the proprietary nature of the Confidential Information and of the obligations set forth in this Agreement, require such Representatives to be bound by written confidentiality restrictions no less stringent than those contained herein, and assume full liability for acts or omissions by its Representatives that are inconsistent with its obligations under this Agreement; (c) keep all Confidential Information strictly confidential by using a reasonable degree of care, but not less than the degree of care used by it in safeguarding its own confidential information; and (d) not disclose any Confidential Information received by it to any third parties (except as otherwise provided for herein).

3. **Use of Confidential Information**.

The Receiving Party agrees to use the Confidential Information solely in connection with the current or contemplated dispute between the parties and not for any purpose other than as authorized by this Agreement without the prior written consent of an authorized representative of the Disclosing Party. No other right or license, whether expressed or implied, in the Confidential Information is granted to the Receiving Party hereunder. Title to the Confidential Information will remain solely in the Disclosing Party.

4. **Compelled Disclosure of Confidential Information**.

Notwithstanding anything in the foregoing to the contrary, the Receiving Party may disclose Confidential Information pursuant to any governmental, judicial, or administrative order, subpoena, discovery request, regulatory request or similar method, provided that the Receiving Party promptly notifies, to the extent practicable, the Disclosing Party in writing of such demand for disclosure so that the Disclosing Party, at its sole expense, may seek to make such disclosure subject to a protective order or other appropriate remedy to preserve the confidentiality of the Confidential Information; provided that the Receiving Party will disclose only that portion of the requested Confidential Information that, in the written opinion of its legal counsel, it is required to disclose. The Receiving Party agrees that it shall not oppose and shall cooperate with efforts by, to the extent practicable, the Disclosing Party with respect to any such request for a protective order or other relief. Notwithstanding the foregoing, if the Disclosing Party is unable to obtain or does not seek a protective order and the Receiving Party is legally requested or required to disclose such Confidential Information, disclosure of such Confidential Information may be made without liability.

5. **Term**.

This Agreement shall remain in effect for a two-year term (subject to a one year extension if the parties are still discussing and considering the dispute at the end of the second year). Notwithstanding the foregoing, the Receiving Party's duty to hold in confidence Confidential Information that was disclosed during term shall remain in effect indefinitely.

6. **Remedies**.

Both parties acknowledge that the Confidential Information to be disclosed hereunder is personal medical or psychiatric information, the unauthorized disclosure of which may cause emotional distress, embarrassment physical illness and/or anxiety to Fabiana McCleod. The damages to Disclosing Party that would result from the unauthorized dissemination of the Confidential Information would be impossible to calculate. Therefore, both parties hereby agree that the Disclosing Party shall be entitled to injunctive relief preventing the dissemination of any Confidential Information in violation of the terms hereof. Such injunctive relief shall be in addition to any other remedies available hereunder, whether at law or in equity. Disclosing Party shall be entitled to recover its costs and fees, including reasonable attorneys' fees, incurred in obtaining any such relief. Further, in the event of litigation relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and expenses.

7. **Return of Confidential Information**.

Receiving Party shall immediately return and redeliver to Disclosing Party all tangible material embodying any Confidential Information provided hereunder and all notes, summaries, memoranda, drawings, manuals, records, excerpts or derivative information deriving therefrom, and all other documents or materials ("Notes") (and all copies of any of the foregoing, including "copies" that have been converted to computerized media in the form of image, data, word processing, or other types of files either manually or by image capture) based on or including any Confidential Information, in whatever form of storage or retrieval, upon the earlier of (i) the completion or termination of the dispute between the parties contemplated hereunder; (ii) the termination of this Agreement; or (iii) at such time as the Disclosing Party may so request; provided however that the Receiving Party may retain such of its documents as is necessary to enable it to comply with its reasonable document retention policies. Alternatively, the Receiving Party, with the written consent of the Disclosing Party may (or in the case of Notes, at the Receiving Party's option) immediately destroy any of the foregoing embodying Confidential Information (or the reasonably nonrecoverable data erasure of computerized data) and, upon request, certify in writing such destruction by an authorized officer of the Receiving Party supervising the destruction).

8. **Notice of Breach**.

Receiving Party shall notify the Disclosing Party immediately upon discovery of, or suspicion of, (1) any unauthorized use or disclosure of Confidential Information by Receiving Party or its Representatives; or (2) any actions by Receiving Party or its Representatives inconsistent with their respective obligations under this Agreement, Receiving Party shall cooperate with any and all efforts of the Disclosing Party to help the Disclosing Party regain possession of Confidential Information and prevent its further unauthorized use.

9. **No Binding Agreement for Transaction**.

The parties agree that neither party will be under any legal obligation of any kind whatsoever with respect to the dispute by virtue of this Agreement, except for the matters specifically agreed to herein. The parties further acknowledge and agree that they each reserve the right, in their sole and absolute discretion, to reject any and all proposals and to terminate discussions and negotiations with respect to the dispute at any time. This Agreement does not create a joint venture or partnership between the parties. If a settlement occurs, the non-disclosure provisions of any applicable settlement documents entered into between the parties (or their respective affiliates) for the dispute shall supersede this Agreement. In the event such provision is not provided for in said transaction documents, this Agreement shall control.

10. **Warranty**.

**NO WARRANTIES ARE MADE BY EITHER PARTY UNDER THIS AGREEMENT WHATSOEVER.** The parties acknowledge that although they shall each endeavor to include in the Confidential Information all information that they each believe relevant for the purpose of this dispute, the parties understand that no representation or warranty as to the accuracy or completeness of the Confidential Information is being made by the Disclosing Party. Further, neither party is under any obligation under this Agreement to disclose any Confidential Information it chooses not to disclose. The Disclosing Party shall have no liability to the Receiving Party (or any other person or entity) resulting from the use of the Disclosing Party's Confidential Information or any reliance on the accuracy or completeness thereof.

11. **Miscellaneous**.

(a) This Agreement constitutes the entire understanding between the parties and supersedes any and all prior or contemporaneous understandings and agreements, whether oral or written, between the parties, with respect to the subject matter hereof. This Agreement can only be modified by a written amendment signed by the party against whom enforcement of such modification is sought.

(b) The validity, construction and performance of this Agreement shall be governed and construed in accordance with the laws of Massachusetts applicable to contracts made and to be wholly performed within such state, without giving effect to any conflict of laws provisions thereof. The Federal and state courts located in Massachusetts shall have sole and exclusive jurisdiction over any disputes arising under, or in any way connected with or related to, the terms of this Agreement and Receiving Party: (i) consents to personal jurisdiction therein; and (ii) waives the right to raise *forum non conveniens* or any similar objection.

(c) Any failure by either party to enforce the other party's strict performance of any provision of this Agreement will not constitute a waiver of its right to subsequently enforce such provision or any other provision of this Agreement.

(d) Although the restrictions contained in this Agreement are considered by the parties to be reasonable for the purpose of protecting the Confidential Information, if any such restriction is found by a court of competent jurisdiction to be unenforceable, such provision will be modified, rewritten or interpreted to include as much of its nature and scope as will render it enforceable. If it cannot be so modified, rewritten or interpreted to be enforceable in any respect, it will not be given effect, and the remainder of the Agreement will be enforced as if such provision was not included.

(e)     Any notices or communications required or permitted to be given hereunder may be delivered by hand, deposited with a nationally recognized overnight carrier, electronic-mail, or mailed by certified mail, return receipt requested, postage prepaid, in each case, to the address of the other party first indicated above (or such other addressee as may be furnished by a party in accordance with this paragraph).  All such notices or communications shall be deemed to have been given and received (a) in the case of personal delivery or electronic-mail, on the date of such delivery, (b) in the case of delivery by a nationally recognized overnight carrier, on the third business day following dispatch and (c) in the case of mailing, on the seventh business day following such mailing.

(f)     This Agreement is personal in nature, and neither party may directly or indirectly assign or transfer it by operation of law or otherwise without the prior written consent of the other party, which consent will not be unreasonably withheld.  All obligations contained in this Agreement shall extend to and be binding upon the parties to this Agreement and their respective successors, assigns and designees.

(g)     Paragraph headings used in this Agreement are for reference only and shall not be used or relied upon in the interpretation of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.


Disclosing Party                                                  Receiving Party

By                                                                       By

_____                          _____
Domenic Paolini as attorney for Fabiana
McLeod

_____2/11/2021_____                      _____
Date                                                                   Date

5