**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
**FABIANA HILLARY MCLEOD, et al.,**     )
                                    )
**Plaintiffs,**          )
                                    )          **Civil Action No.**
**v.**                  )          **21-10807-FDS**
                                    )
**THE FESSENDEN SCHOOL, et al.,**        )
                                    )
**Defendants.**         )
_____)


**MEMORANDUM AND ORDER ON**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

SAYLOR, C.J.

This case concerns alleged acts of sexual abuse and molestation of a student by her

teacher. According to the complaint, some of the abuse occurred during a summer program at

The Fessenden School. Plaintiffs have brought various claims against defendant Primo "Howie"

Leung, the alleged abuser, and against Fessenden and certain of its administrators, employees,

and trustees. Specifically, Counts 16 through 50 of the complaint assert claims of gross

negligence and willful and wanton misconduct against each Fessenden-trustee defendant. In

addition, Counts 51 and 52 assert claims of loss of consortium against all defendants.

The trustee defendants collectively have moved to dismiss Counts 16 through 52 pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the

reasons set forth below, the motion to dismiss will be granted.

I.      **<u>Background</u>**

   A.      **<u>Factual Background</u>**

Fabiana McLeod was a student at the Rundlett Middle School in Concord, New

Hampshire, between September 2013 and June 2016.  (Compl. ¶ 108).  At that time, Primo "Howie" Leung was a teacher at Rundlett.  (*Id.* ¶ 106).

According to the complaint, the relationship between Leung and McLeod became sexual in February 2015, and continued into the summer of 2015 during a summer program at the Fessenden campus in Newton, Massachusetts.  (*Id.* ¶¶ 112, 132).  Leung was a teacher and co-director of the Fessenden English Language Learners summer program, a five-week immersive program.  (*Id.* ¶¶ 116-17).  To assist with the program, Leung would bring student helpers with him to the Fessenden campus.  (*Id.* ¶ 120).  McLeod was a student helper during the summer of 2015 and 2016.  (*Id.* ¶ 126).

The complaint alleges that Leung would drive McLeod from New Hampshire to Fessenden, and during these trips he would force her to touch his genital area.  (*Id.* ¶¶ 123-124).  It further alleges that at Fessenden he would intentionally assign McLeod a "secluded corner room" in the dormitory where he would enter and sexually abuse her.  (*Id.* ¶¶ 129-30, 132-37).

According to the complaint, during the summer of 2016, Leung "escalated the frequency and intensity of his sexual assaults" on McLeod.  (*Id.* ¶ 139).  During that summer, Leung organized a field trip to New York and allegedly forced McLeod to perform oral sex on him in his hotel room.  (*Id.* ¶¶ 140-148).  Once they returned to Fessenden, Leung "continued his assaults" on McLeod.  (*Id.* ¶ 151).  The complaint alleges that he would "forcibly kiss her[,] . . . fondle her breasts under her shirt, undress her, and digitally and orally rape her" in a secluded stairwell at Fessenden.  (*Id.* ¶ 160). According to the complaint, the number of times McLeod was assaulted at Fessenden "are too numerous to count."  (*Id.* ¶ 162).

### B.    Procedural Background

In April 2019, Leung was arrested and charged with sexual assault on a minor.  (*Id.* ¶ 170).

On May 17, 2021, plaintiffs filed a complaint against 49 defendants, asserting 65 counts. On July 29, 2021, defendant trustees filed a motion to strike pursuant to rule 12(f).  This Court granted in part and denied in part that motion on August 17, 2022.

On August 10, 2021, the Fessenden trustee defendants moved to dismiss Counts 16-50 (gross negligence) and Count 51-52 (loss of consortium). [1]

## II.    Standard of Review

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico*

---

[1] There are 35 counts of "gross negligence and willful and wanton misconduct" because plaintiffs have brought a claim for gross negligence against each trustee defendant, and there are 35 trustee defendants.  The trustee defendants are the following individuals:  Ian Loring; Michael Mach; Michael Murray; Jeffrey Allen; Christopher Bartel; Melisa Berman; Stephanie Bucci; Tara Ciongoli; Bruce Dayton; Edward Denoble; Robert Dickey; Jennifer Mugar Flaherty; Charles Fadel; Keith Gelb; Craig Gemmel; Michael Gordan; Grace Hoffmann; Solomon Kumin; Susan Levine; Pamela Lomax; Mark Moore; Elizabeth Munro; Peter Mulderry; V.G. Narayanan; Christian Nolen; Steven Peck; Rachel Skiffer; Thomas Roberts; Christine Todd; Davide Visco; Robert Waldron; Jennifer Stier; Peter Welch; Trustee Doe; and, Trustee Roe.

*del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.   Analysis

#### A.   Rules 4(d)(3) and 12(g)

Plaintiffs contend that this Court should deny the motion to dismiss for two reasons. First, they contend that the motion is untimely because it was filed after the 60-day deadline imposed by Fed. R. Civ. P. 4(d)(3). Second, they contend that it should be dismissed pursuant to Fed. R. Civ. P. 12(g), because defendants filed the motion to dismiss after, instead of with, its motion to strike under Fed. R. Civ. P. 12(f), and therefore waived their right to assert it.

As an initial matter, defendants did comply with Rule 4(d). Defendants filed a motion under Rule 12 within 60 days after the request to waive service of summons was sent. *See* Fed. R. Civ. P. 4(d)(3); Fed. R. Civ. P. (12). Specifically, defendants filed a motion to strike pursuant to Rule 12(f) on July 29, 2021 (which is less than 60 days from June 4, 2021, the date that plaintiffs sent a request to waive service of summons).

Furthermore, defendants did not waive their right to assert a motion to dismiss under Rule 12(b)(6) even though they did not raise it when they filed their motion to strike. *See Lu v. Canton Corp.*, 2015 WL 2402925, at *1 (D. Mass. May 20, 2015) ("Plaintiff is incorrect. FRCP 12(h) specifically provides that the defense of failure to state a claim pursuant to FRCP 12(b)(6) is preserved against waiver."); *see also Hickey v. MetroWest Med. Ctr.*, 193 F. App'x 4, 5 (1st Cir. 2006) ("Although the successful motion to dismiss was the second motion to dismiss filed by [defendant], Rule 12(h) provides exceptions to waiver for the defense of failure to state a claim, see Fed.R.Civ.P. 12(h)(2) . . . . Accordingly, there was no error.").[2]

---

[2] *See also Muhammad v. Vill. of Bolingbrook*, 2004 WL 1557958, at *1 (N.D. Ill. July 8, 2004) (explaining that "a court might properly entertain [a] second motion to dismiss if convinced that it is not interposed for delay and that the disposition of the case on the merits can be expedited by doing so") (internal quotation marks and citations omitted). There, the court found that "defendants' renewed motion me[t] that standard" because "the motion d[id] not appear to have been filed to delay proceedings and adjudication of th[e] motion w[ould] narrow the

Accordingly, this Court will not deny the motion to dismiss as untimely, or on the basis of waiver, pursuant to Rule 4(d)(3) or Rule 12(g).

**B.    Gross Negligence Claims**

Defendants contend that the gross negligence claims asserted against the trustees should be dismissed on the grounds that (1) the trustees did not owe a legal duty to McLeod and (2) the complaint does not sufficiently plead allegations to support such claims.  Because the Court agrees that the complaint fails to allege sufficient facts to support a claim for gross negligence on the part of the trustees, it will not reach the first issue.

In any negligence case, a plaintiff must prove (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. *See, e.g., Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir.1990) (applying Massachusetts law).  Ordinarily, a person "do[es] not owe others a duty to take action to rescue or protect them from conditions [h]e ha[s] not created."  *Cremins v. Clancy*, 415 Mass. 289, 296 (1993) (O'Connor, J., concurring).  However, and as § 314A of the Restatement (Second) of Torts expressly recognizes, there exist "special relationships" that give rise to a duty to act or to protect a person where otherwise no duty would exist:

> This Section states exceptions to the general rule, stated in § 314, that the fact that the actor realizes or should realize that his action is necessary for the aid and protection of another does not in itself impose upon him any duty to act.  The duties stated in this Section arise out of special relations [common carrier, innkeeper, land owner, one who is required by law or voluntarily takes custody of another] between the parties, which create a special responsibility, and take the case out of the general rule.  The relations listed are not intended to be exclusive,

---

issues before the court, allowing it to resolve th[e] matter more quickly." *Id.*  The court explained that "[f]ailure to rule would result only in unnecessary delay, expense and inconvenience for all parties." *Id.*  For that reason, the court addressed the merits of defendants' motion.

Here, defendants filed their motion to dismiss only 12 days after their motion to strike.  The Court is not convinced that defendants filed that motion to cause delay and, moreover, addressing defendants' motion to dismiss will allow the Court to narrow the issues and resolve matters more quickly, as it will dispose of 37 counts.

and are not necessarily the only ones in which a duty of affirmative action for the
aid or protection of another may be found.

Restatement (Second) of Torts § 314A cmt. b (1965).

Whether such a duty is owed is a question of law.  *Bash v. Clark Univ.*, 2006 WL
4114297, at *4 (Mass. Super. Nov. 20, 2006).  The "question of duty is determined by a
consideration of 'existing social values, customs, and considerations of policy.'"  *Id.* at *4
(quoting *Luoni v. Berube*, 431 Mass. 729, 730 (2000)).  Massachusetts courts have held that
schools have a duty to protect resident students from the criminal acts of third parties.  *See
Mullins v. Pine Manor Coll.*, 389 Mass. 47, 51 (1983) ("We think it can be said with confidence
that colleges of ordinary prudence customarily exercise care to protect the well-being of their
resident students, including seeking to protect them against the criminal acts of third parties.").

Thus, under Massachusetts law, and as a general matter, a school typically owes a special
duty to students that are housed in a facility on its campus.  *See Doe v. Emerson Coll.*, 153 F.
Supp. 3d 506, 515 (D. Mass. 2015); *Mullins*, 389 Mass. at 50-55.  That is particularly true in the
case of residential students at the elementary, middle, and secondary levels.  *See Bash*, 2006 WL
4114297, at *4 (noting that there "are fundamental and obvious distinctions between children at
the elementary, middle and secondary levels" and "college students [who] have attained the age
of majority by the time they enroll as freshmen" and therefore a difference in the legal duty
owed).

It seems clear, therefore, that Fessenden owed a legal duty to McLeod when she was a
residential student on their campus (albeit during a summer program).  However, it is much less
clear whether the trustees owed a legal duty to McLeod, and, if so, what the scope of that duty
would be.  Unlike administrators, trustees are a step removed from a school's daily operations
and would have less involvement in the day-to-day activities occurring on campus.  The Court

need not reach a conclusion as to that issue, however.  Regardless, the gross negligence counts

will be dismissed because the complaint fails to allege specific acts of negligent conduct by any

of the individual trustees.  In fact, the complaint barely mentions those individuals at all.

Other than naming who they are as individuals, the complaint's only factual allegations

against the trustees are found in paragraphs 94-97.  The Court has already struck paragraph 94.

Paragraphs 95-97 do not refer to any individual defendant trustee.  Nor do they allege any

specific negligent conduct taken by any person.  Rather, they simply make broad and conclusory

allegations, such as "the Board of Trustees must have been aware of Headmaster Stettler's 'every

effort' . . . and made sure his 'every effort' was implemented" and "[t]he Trustees and

Headmaster Stettler made assertions about how well The Fessenden School is protecting

children, when they knew that The Fessenden School was actually doing very little or nothing to

protect children."  (Compl. ¶¶ 95, 97).  Such allegations are not sufficient to allege a claim for

gross negligence.

"Gross negligence is substantially and appreciably higher in magnitude than ordinary

negligence."  *Altman v. Aronson*, 231 Mass. 588, 591 (1919).

> It is an act or omission respecting legal duty of an aggravated character as
> distinguished from a mere failure to exercise ordinary care.  It is very great
> negligence, or the absence of slight diligence, or the want of even scant care.  It
> amounts to indifference to present legal duty and to utter forgetfulness of legal
> obligations so far as other persons may be affected.

*Id.* at 592.  "The voluntary incurring of obvious risk and persistence in a palpably negligent

course of conduct over an appreciable period of time are among the more common indicia of

gross negligence."  *Brandt v. Davis*, 98 Mass. App. Ct. 734, 741 (2020), *review denied*, 486

Mass. 1111 (2021) (internal quotation marks and citations omitted).

The complaint does not allege that any type of specific conduct was taken, or failed to be

taken, by defendants that rises to the level of gross negligence.  There is nothing, for example,

that alleges or even suggests that the trustees actually knew about current or ongoing sexual assaults and did nothing to stop it.  There are no allegations that allege or suggest what the trustees should have been doing or some specific act that they failed to do.  The trustees cannot be held liable for the alleged harm simply because they held their positions when the harm occurred.

Accordingly, and for the reasons stated above, the Court will grant the motion to dismiss as to Counts 16 through 50.

### C.    Loss of Consortium

"As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury."  *Sena v. Commonwealth*, 417 Mass. 250, 264 (1994).  Therefore, an "implicit prerequisite" of a loss of consortium claim is that "the injured spouse have a viable claim."  *Id.*  Because the gross negligence claims against defendant trustees fail, the loss of consortium claims against those defendants must also fail.[3]

Accordingly, the Court will grant the motion to dismiss as to Counts 51 and 52 as to the trustees.

### IV.    Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

---

[3] No other tort claims are asserted as to defendant trustees.  (*See generally* Compl.).  Thus, if the gross negligence claims are dismissed, no claims remain as to defendant trustees.

**So Ordered.**

/s/ F. Dennis Saylor IV

F. Dennis Saylor IV

Dated: August 31, 2022                    Chief Judge, United States District Court