**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                         )
**FABIANA HILLARY MCLEOD, et al.,**      )
                                                         )
        **Plaintiffs,**                                )
                                                         )        **Civil Action No.**
        **v.**                                            )        **21-10807-FDS**
                                                         )
**THE FESSENDEN SCHOOL, et al.,**         )
                                                         )
        **Defendants.**                              )
_____)


**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**
**AND PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**


**SAYLOR, C.J.**

        This case concerns alleged acts of sexual abuse and molestation of a student by her

teacher.  According to the complaint, some of the abuse occurred during a summer program at

The Fessenden School.  Plaintiffs have brought various claims against defendant Primo "Howie"

Leung, the alleged abuser, and against Fessenden and certain of its administrators, employees,

and trustees.  Count 61 of the complaint asserts a violation of the Trafficking Victims Protection

Act ("TVPA"), 18 U.S.C. § 1595.

        Defendant Leung has moved to dismiss Count 61 pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.[1]  Plaintiff McLeod has subsequently

filed a motion to amend the complaint.  For the reasons set forth below, the motion to dismiss

_____
        [1] Defendant moved to dismiss Counts 7, 8 and 61.  However, plaintiffs have voluntarily dismissed Counts 7
and 8.

will be granted and the motion to amend will be denied.

## I.     Background

### A.     Factual Background

Fabiana McLeod was a student at the Rundlett Middle School in Concord, New Hampshire, between September 2013 and June 2016.  (Compl. ¶ 108).  At that time, Primo "Howie" Leung was a teacher at Rundlett.  (*Id.* ¶ 106).

According to the complaint, the relationship between Leung and McLeod became sexual in February 2015, and continued into the summer of 2015 during a summer program at the Fessenden campus in Newton, Massachusetts.  (*Id.* ¶¶ 112, 132).  Leung was a teacher and co-director of the Fessenden English Language Learners summer program, a five-week immersive program.  (*Id.* ¶¶ 116-17).  To assist with the program, Leung would bring student helpers with him to the Fessenden campus.  (*Id.* ¶ 120).  McLeod was a student helper during the summer of 2015 and 2016.  (*Id.* ¶ 126).

The complaint alleges that Leung would drive McLeod from New Hampshire to Fessenden, and during these trips he would force her to touch his genital area.  (*Id.* ¶¶ 123-124).  It further alleges that at Fessenden he would intentionally assign McLeod a "secluded corner room" in the dormitory where he would enter and sexually abuse her.  (*Id.* ¶¶ 129-30, 132-37).

According to the complaint, during the summer of 2016, Leung "escalated the frequency and intensity of his sexual assaults" on McLeod.  (*Id.* ¶ 139).  During that summer, Leung organized a field trip to New York and allegedly forced McLeod to perform oral sex on him in his hotel room.  (*Id.* ¶¶ 140-148).  Once they returned to Fessenden, Leung "continued his assaults" on McLeod.  (*Id.* ¶ 151).  The complaint alleges that he would "forcibly kiss her[,] . . . fondle her breasts under her shirt, undress her, and digitally and orally rape her" in a secluded stairwell at Fessenden.  (*Id.* ¶ 160). According to the complaint, the number of times McLeod

was assaulted at Fessenden "are too numerous to count." (*Id.* ¶ 162).

### B.     Procedural Background

In April 2019, Leung was arrested and charged with sexual assault on a minor. (*Id.*

¶ 170).

On May 17, 2021, plaintiffs filed a complaint against 49 defendants, asserting 65 counts.

Defendant Leung has moved to dismiss Count 7 (violation of Mass. Gen. Laws ch. 151C,

§ 2(g)), Count 8 (violation of Mass. Gen. Laws ch. 151B, § 4(16A)), and Count 61 (violation of

18 U.S.C. § 1595) under Rule 12(b)(6). Plaintiffs have voluntarily dismissed Counts 7 and 8.

(*See* Dkt. No. 66, Pl. Opp. at 2). In addition, plaintiffs have moved to amend the complaint to

add two counts and two exhibits. (*Id.* at 13).

## II.     Motion to Dismiss

### A.     Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a

claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief

above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a

court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all

reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir.

2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the

complaint fails to set forth "factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v.*

*Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### B.   Count 61

Defendant contends that the TVPA claim should be dismissed because the complaint fails to sufficiently plead that McLeod engaged in a "commercial sex act" within the meaning of the statute.  Plaintiffs request that the court consider a document outside of the complaint for proof that a commercial sex act occurred—specifically, that the court consider the "Commonwealth's Statement of the Case."  (Pl. Opp. at 7).  However, subject to certain exceptions not applicable here, the court may not consider such outside documents to support the allegations in the complaint.[2]

The TVPA was passed in 2000 and established various criminal offenses concerning human trafficking.  (Pub. L. 106-386, 114 Stat. 1464).  Those offenses included, among others, providing or obtaining forced labor (18 U.S.C. § 1589); trafficking with respect to peonage, slavery, involuntary servitude or forced labor (18 U.S.C. § 1590); sex trafficking of children by force, fraud, or coercion (18 U.S.C. § 1591); removing or destroying a government identification document in the course of a trafficking violation (18 U.S.C. § 1592); attempting to commit an offense prohibited by the act (18 U.S.C. § 1594); and conspiring to commit an offense prohibited

---

[2] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Arturet-Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005) ("The court can consider . . . implications from documents incorporated into the complaint").  The only exception that is relevant here is "documents of undisputed authenticity."  Plaintiffs contend that this Court should consider the Commonwealth's Statement of the Case because its authenticity is not disputed.  However, that exception generally applies when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon" a document of undisputed authenticity. *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (citations omitted).  The document plaintiffs request that this Court consider is essentially duplicative of the facts alleged in the complaint; it is not a document "whose contents are alleged in the complaint" or the type of document upon which "[plaintiffs'] allegations rest." *Id.*  For those reasons, the Court will not consider the Commonwealth's Statement of the Case.

by the act (18 U.S.C. § 1594).

Three years later, Congress passed the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which, among other things, established a civil right of action for trafficking victims.  (Pub. L. 108-193, 117 Stat. 2875).  The act includes a civil remedy, which provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator . . . ."  18 U.S.C. § 1595.  A "violation of this chapter" means a violation of any of the enumerated trafficking-related crimes.

The relevant provision here is § 1591.  That statute provides, in relevant part, "[w]hoever knowingly—in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" with knowledge "that means of force, threats of force, fraud, coercion . . ., or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be [guilty of an offense]."  18 U.S.C. § 1591(a).  The term "commercial sex act" is defined to mean "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1595(e)(3).

Several courts have interpreted the TVPA broadly.  *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018) (noting that the TVPA "requires broad interpretation").  For example, in cases concerning alleged abuse by film producer Harvey Weinstein, victims were permitted to assert TVPA claims; promises of career advancement and other opportunities in exchange for sex acts were considered sufficient to be a "commercial sex act."  S*ee, e.g. Geiss v. Weinstein Co. Holdings, LLC*, 383 F.Supp.3d 156, 167-68 (S.D.N.Y. 2019) (finding that actresses plausibly alleged that Weinstein enticed them to engage in commercial sex acts, in

5

violation of § 1591, using promises of career advancement); *Noble*, 335 F. Supp. 3d at 515 (finding that the complaint plausibly alleged that Weinstein violated § 1591 when he "employed both fraud and physical force to cause [her] to engage in a sex act with him," even though her claim "is not an archetypal sex trafficking action"); *Canosa v. Ziff*, 2019 WL 498865, at *23 (S.D.N.Y. Jan. 28, 2019) (same).

Here, the complaint sufficiently pleads that defendant transported McLeod across state lines in order to isolate and then sexually abuse her. (*See* Compl. ¶¶ 123-24, 129, 132). Specifically, it alleges that defendant transported McLeod from New Hampshire to Massachusetts, where he abused her on the Fessenden campus. (*Id.*). And it also alleges that he transported her from Massachusetts to New York, where he abused her in a hotel room. (*Id.* ¶¶ 140-150).

However, the complaint fails to plead sufficient facts to infer that a "commercial sex act" occurred—that is, that something of value was exchanged "on account of" a sex act. Certainly nothing in the complaint suggests that McLeod was enticed or forced into prostitution. The most that it alleges is that "shortly after the New York City field trip . . . Leung sent Fabiana a hat he bought for her online." (Compl. ¶ 153). The Court has considerable doubts as to whether the TVPA—which is a criminal statute that also provides civil penalties—should be interpreted broadly to encompass conduct that is not clearly prohibited by its text. But even construing the statute broadly, the allegations in the complaint are insufficient. Nothing in the complaint alleges that the hat was bought for McLeod because she engaged in sexual activity with defendant, or that she engaged in sexual activity because she expected to receive such a gift. Indeed, plaintiffs do not even mention the hat in their opposition papers. Because the complaint fails to include sufficient allegations as to a "commercial sex act," Count 61 fails to state a

claim.[3]

Accordingly, the Court will grant the motion to dismiss as to Count 61.

### III.   Motion to Amend the Complaint

Plaintiffs filed a motion for leave to amend the complaint—which was not filed separately, but simply appended to their opposition to defendant's motion to dismiss—to add new claims and to include the "Commonwealth's Statement of the Case" and "page 66 of the Perkins Report" as exhibits. Specifically, plaintiffs seek to add two counts for alleged violations of McLeod's civil rights "pursuant to Mass. Gen. Laws ch. 12, § 11I (False Imprisonment and Intentional Infliction of Emotional Distress)." (Pl. Opp. at 13).

### A.   Proposed Addition of Claims

Under Rule 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court does not have to "mindlessly grant every request for leave to amend. When a proffered amendment . . . would be

---

[3] Even if the Court were to consider the allegations in the Commonwealth's Statement of the Case, that document does not provide additional facts sufficient to support a claim under the TVPA. Again, nothing in that document suggests that McLeod was enticed or forced into prostitution. Nor does it assert that plaintiff received gifts because she engaged in sexual activity with defendant, or that she engaged in sexual relations with defendant because she expected that she would receive gifts from him. It simply states, "[t]hroughout this time the defendant also gave [McLeod] various gifts such as shoes, jewelry and a laptop." (Pl. Opp., Ex. 1 at 3). Thus, neither the complaint nor the Commonwealth's Statement of the Case allege that the gifts were provided "on account of" a sex act.

an exercise in futility, *or otherwise would serve no useful purpose*, the district court need not

allow it." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006) (emphasis added).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which

relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

The court must review a proposed amended complaint for futility under the "standard [that]

applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing &*

*Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

As an initial matter, plaintiffs have not provided a proposed amended complaint, nor any

other specifics as to what the amendment would actually say.  In fact, plaintiffs have done little

beyond including a heading in their opposition memorandum that states the following:  "Leave to

Amend Complaint to Add Causes of Action LXVI and LXVII, Actions Against Defendants

Primo Leung and The Fessenden School for Violation of Her Civil Rights, Pursuant to M.G.L. c.

12 § 11I, (False Imprisonment and Intentional Infliction of Emotional Distress)."  It thus appears

that plaintiffs are seeking to add two claims under Mass. Gen. Laws ch. 12, § 11I, apparently

arising out of claims for false imprisonment and intentional infliction of emotional distress.

To the extent that plaintiffs are seeking to add claims pursuant to Mass. Gen. Laws ch.

12, § 11I, such claims would be futile.  That statute provides a right of action to any person

whose exercise or enjoyment of rights secured by the federal or state constitution or laws has

been interfered with by "threats, intimidation, or coercion."  *See Bally v. Northeastern Univ.*, 403

Mass. 713, 717, 532 N.E.2d 49 (1989).  A "threat" means the "intentional exertion of pressure to

make another fearful or apprehensive of injury or harm."  *Planned Parenthood League of Mass.,*

*Inc. v. Blake*, 417 Mass. 467, 474 (1994).  "Intimidation" means putting a person in fear for the

purpose of compelling or deterring his or her conduct.  *Id.*  "Coercion" means application of

physical or moral force to another to constrain him to do against his will something he would not otherwise do.  *Id.*

On its face, the MCRA contemplates a two-part sequence:  (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do.  Thus, for example, the statute would apply where a defendant (1) threatened to beat up the plaintiff if (2) the plaintiff exercised his right to vote.  In the present case, forcing one to perform oral sex or engage in other sexual acts would presumably qualify as "threats, intimidation, or coercion."  The problem is ascertaining the constitutional rights to which those assaults were allegedly directed.

Based on plaintiffs' memorandum, the constitutionally-secured right at issue appears to be McLeod's "fundamental right to move freely within the Commonwealth."  (Pl. Opp. at 13) (quoting *Commonwealth v. Weston*, 455 Mass. 24, 32-33 (2009)).  In other words, plaintiffs seem to be arguing that defendant sexually assaulted McLeod in order to cause her to give up her right to move freely within the Commonwealth.  That argument makes little sense, and in any event such a construction of the statute would torture it well beyond its plain meaning.  *See Goddard v. Kelley*, 629 F. Supp. 2d 115, 128-29 (D. Mass. 2009) (citing cases).  For that reason, the complaint does not plausibly allege that the MCRA applies to these facts, and plaintiffs will not be granted leave to amend such a claim.

To the extent plaintiffs are simply seeking to add claims for false imprisonment or intentional infliction of emotional distress, that too would be pointless.  Count 6 of the current complaint already asserts a claim for false imprisonment.  And Count 63 asserts a claim for intentional infliction of emotional distress.  Permitting plaintiffs to add those additional claims would be redundant and "serve no useful purpose."  *Aponte-Torres*, 445 F.3d at 58.

Accordingly, this Court will deny plaintiffs' motion for leave to amend as it pertains to adding any claims pursuant to Mass. Gen. Laws ch. 12, § 11I, false imprisonment, or intentional infliction of emotional distress.

**B.** **Addition of Two Exhibits**

The Court will also deny plaintiffs' motion for leave to amend to the extent it seeks to add (1) the Commonwealth's Statement of the Case and (2) page 66 of the Perkins Report. The factual allegations in those documents are almost entirely duplicative of the information already provided in the complaint. That complaint, in its current iteration, is extraordinarily lengthy and complicated, and the additional material would "serve no useful purpose" under the circumstances. *Aponte-Torres*, 445 F.3d at 58.

**IV.** **Conclusion**

For the foregoing reasons, defendant's motion to dismiss is GRANTED and plaintiffs' motion to amend the complaint is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: August 31, 2022                Chief Judge, United States District Court